**In the Matter of Barnett FRIEDENBERG, Debtor.**

**CITIBANK, N. A., Plaintiff,**

v.

**Barnett FRIEDENBERG, Defendant.**

**Bankruptcy Nos. 80–B–10829, 80–5292–A.**

United States Bankruptcy Court,
S. D. New York.

July 29, 1981.

Benenson & Scher, P. A., Millburn, N. J., Winston & Sherman, New York City, for plaintiff; Edward R. Longo, Millburn, N. J., of counsel.

Lapatin, Lewis, Green, Kitzes & Blatteis, P. C., New York City, for defendant; Noel H. Kaplan, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

On June 5, 1980, the debtor, Barnett Friedenberg, (Friedenberg) filed a voluntary bankruptcy petition as an eligible debtor under Section 301 of the 1978 Bankruptcy Code, 11 U.S.C. § 301.[1]

Plaintiff, Citibank, following the adversary proceedings route of Part VII of the Bankruptcy Rules, filed a complaint seeking judgment that a debt owed to it by Friedenberg was not discharged within the meaning of 11 U.S.C. § 523(a)(6). Rules 701(7) and 703, 411 U.S. 1068–9, 93 S.Ct. 3147, 37 L.Ed.2d LXVI. This course was required by Rule 409, 411 U.S. 1052, 93 S.Ct. 3135–6, 37 L.Ed.2d LIX, particularly Rules 409(a) and (d). While it is true that these 1973 Rules were promulgated under 28 U.S.C. (1976 ed.) § 2075 to govern procedures under the now repealed 1898 Act, Interim Rule 4003 relevant to the 1978 Code makes Rule 409(a) applicable to Code challenges to the dischargeability of certain debts.[2]

Citibank's complaint alleged that the debt evidenced by a final judgment of a New Jersey state court was not discharged because it fell within 11 U.S.C. § 523(a)(6) that excepted from a debtor's discharge any debt based on "willful and malicious injury by the debtor" to the property of another.[3]

---

1. Section 401(a) of Title IV of the 1978 statute, Pub.L. 95–598, 92 Stat. 2682, repealed the 1898 Bankruptcy Act effective October 1, 1979. Unless otherwise noted, references to sections of Title I, the Code, are cited as 11 U.S.C. § ___. The 1978 Bankruptcy Code is in Supplement III to the 1976 edition of Title II, United States Code.

2. Rule 409 spoke to debts not within a bankrupt's discharge as enumerated in Section 17(a) of the 1898 Act, 11 U.S.C. (1976 ed.) § 35(a). Interim Rule 4003 cites to 11 U.S.C. § 523(a), the Code analogue to Section 17(a).

Interim Rule 4003, adopted in this District, is one of a package of Suggested Interim Bankruptcy Rules drafted by the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States. The Committee is chaired by Circuit Judge Aldisert.

3. This "willful and malicious injury" exception to a discharge includes a willful and malicious conversion. Both the House and the Senate were in agreement on this and this explains the omission of conversion from the debts described in 11 U.S.C. § 523(a) although it was included in Section 17(a)(2) of the 1898 Act. 124

Friedenberg filed an answer, then moved to dismiss the complaint for failure to state a claim pursuant to Bankruptcy Rule 712. Citibank responded by filing a motion for summary judgment for the relief sought in its complaint as provided by Bankruptcy Rule 756, 411 U.S. 1074, 1084, 93 S.Ct. 3159, 37 L.Ed.2d LXXII.[4]

■ Rule 3(g) of the Local Rules of Procedure of the Southern District of New York requires that the movant in a summary judgment motion attach a separate, short and concise statement containing the material facts not in contention and as to which there is no issue. If these facts are not controverted by the opposing party, they are deemed admitted. Friedenberg did not file a response to Citibank's motion for summary judgment. This court therefore accepts Citibank's citation of the controlling facts as accepted by Friedenberg. Those controlling facts are these: Friedenberg, as sole shareholder, director and officer of Pro-Metric Systems, Inc. (Pro-Metric) a New York corporation, applied to Citibank for a line of credit sometime between March of 1973 and March of 1974. He was never notified whether the credit application was approved or denied and Pro-Metric was dissolved on December 16, 1974, pursuant to Section 203–A of the New York Tax Law (McKinney). The company ceased doing business in late 1974 or early 1975 but its corporate checking account remained open for several years afterward. In March of 1977, the balance in that account was approximately $1,000. The next bank statement received after March, 1977 disclosed that the balance had increased to approximately $101,000. Within the next several weeks, Friedenberg drew a series of checks totalling $28,000. on Pro-Metric's account which Citibank paid. Despite the fact that Pro-Metric had ceased doing business two years prior to this incident, and the debtor had not made any deposits into

that account, he allegedly believed the increase in the statement was based on a grant of the application for credit made years before. Citibank discovered the error in crediting the $100,000. to Pro-Metric's account in short order and debited the account for the approximate amount which resulted in an overdraft of $27,011.85.

Citibank sued in Superior Court of New Jersey to recover the $27,011.85. Friedenberg, in defense, contended that the money was from the long-awaited line of credit. The state court rejected this argument and granted the bank's motion for summary judgment pursuant to New Jersey Civil Practice Rule 4:46–2, and awarded $27,011.85 plus 7% interest, for a total judgment of $30,925.86. This judgment was entered on August 8, 1979.

Friedenberg did not pay anything to reduce this debt. Instead, he filed the petition in bankruptcy less than a year later. This filing stayed the bank, as a creditor, from enforcing its judgment. 11 U.S.C. § 362. Citibank then filed its complaint that the debt survive the debtor's discharge.

■ Friedenberg's motion to dismiss the complaint must be denied. The alleged failure by Citibank to state a claim rests on a misconception of the law in this circuit. Friedenberg claims that a debt must arise from a tort in order to be nondischargeable as one based on willful and malicious injury within 11 U.S.C. § 523(a)(6), and that since he was sued on a contract theory in the New Jersey court, he is not within the bar of that section. However, the dischargeability of a claim is not to be settled by the form of a complaint but resort may be had to the entire record to determine whether it falls within the exception. *Greenfield v. Tuccillo*, 129 F.2d 854 (2d Cir. 1942); *Rivera v. Moore-McCormack*, 238 F.Supp. 233 (S.D. N.Y.1965).

Cong.Rec. H. 11095–6 (daily ed. September 28, 1978), and 124 Cong.Rec. S. 17412–3 (daily ed. October 6, 1978).

**4.** Bankruptcy Rules 708, 712(b) and 756 provide that Rules 8, 12 and 56 of the Federal

Rules of Civil Procedure govern pleadings in adversary proceedings in bankruptcy. Accordingly, further references to rules of procedure will be to the F.R.Civ.P.

This court will not exalt form over substance to the end that it binds itself by the choice of language in an action in another forum. *Feick v. Fleener*, 653 F.2d 69 (2d Cir. 1981). Even if the state court action sounded in contract, this court can look behind the gravamen pleaded to determine the nature of the disputed debt from the standpoint of whether it will survive a bankruptcy discharge. Moreover, there is nothing to suggest that the character of a debt as one surviving discharge will depend on whether it had been reduced to a judgment and, if so, how the action was pleaded. 11 U.S.C. § 101(11) of the Code defines "debt" to mean the liability on a claim which is itself defined in the broadest terms in 11 U.S.C. § 101(4)(A). It is then the responsibility of this court to determine whether or not a debt has been extinguished under 11 U.S.C. § 523(a).

Since the issue of whether the state action arose in tort or contract is not relevant to the motion to dismiss, the court turns now to the Citibank complaint to test its sufficiency. The law is settled that all that is necessary to resist a motion to dismiss is that the complaint states a claim on which relief can be granted. *Michael v. Clark Equipment Company*, 380 F.2d 351 (2d Cir. 1967). That this suit arises in a bankruptcy case does not mean that special pleadings are required, for a uniform system of pleading was adopted for all cases in federal court. *Nagler v. Admiral Corp.*, 248 F.2d 319 (2d Cir. 1957). "Under the F.R. Civ.P. a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty the plaintiff would be entitled to no relief under any set of facts which could be proven in support of his claim". *Thompson v. Allstate Insurance Co.*, 476 F.2d 746 (5th Cir. 1973). As Citibank has already made out a sufficiently convincing case to support a state court judgment in its favor, Friedenberg's motion to dismiss on that ground seems particularly inappropriate.

Friedenberg also rests his motion on the allegation that Citibank framed its complaint here in such a way that the elements needed to prove conversion were not included. But the Federal Rules are very clear that all that is required to sustain a complaint is a short and plain statement of the ultimate facts. "Ancestor worship in the form of ritualistic pleadings has no more disciples. The time when the slip of a sergeant's quill pen could spell death for a plaintiff's cause of action, is past. Under the Federal Rules of Civil Procedure, a complaint is not an anagramatic exercise in which the pleader must find exactly the prescribed combination of words and phrases." *Thompson v. Allstate Insurance Co., supra*, at 749.

Friedenberg goes on and asserts that the complaint is insufficient as it does not specifically allege he used funds known not to belong in his account. In short, he contends that the erroneous credit to the account "tacitly gave bare title to the use of these funds". This stretches the imagination of this court beyond credulity. Basically, this debtor argues that if Citibank had notified him that the $100,000. was not his and he had then drawn on the funds, conversion would lie. Thus, he concludes, that since he had already drawn over 25% of the money before he was told of the mistake, conversion has not been shown and therefore no willful and malicious injury so that the debt is extinguished. When it is remembered that the debtor withdrew $28,000. in a relatively short time from an account belonging to a corporation no longer in existence, one can surely view his actions as an effort to cash in on a windfall that could not last. This debtor is no stranger to the business world and admits in his deposition taken in the state court suit that the money was used "for business purposes" without clarifying further. (Transcript of Friedenberg deposition, p. 29). But the money withdrawn from Pro-Metric's account for Friedenberg's business purposes found their way directly to his personal checking account. (Deposition at p. 30). The court finds this testimony, coupled with the defendant's admission that Pro-Metric had ceased doing business two years before the erroneous credit was issued, sufficient to sustain the complaint. These findings of fact by the

New Jersey court were integral to the decision to grant summary judgment for the bank in the action there.

█ Friedenberg's second point in support of his motion to dismiss is that the statute of limitations has run, as more than three years have passed since May 5, 1977 when Citibank discovered its error and debited the account. This argument is totally without merit. The state court action was timely filed and a judgment was entered in accordance with New Jersey procedure. The debt was therefore reduced to judgment, and there is no statute of limitations to apply to the issue of dischargeability now before this court. Congress wrote no period of limitation on the age of a debt which a creditor seeks to remain outside a discharge. Were it otherwise, a debtor could so time his petition to extinguish debts assertable in a bankruptcy but not able to survive the bankruptcy discharge. Citibank rests its motion for summary judgment on the underlying basis for the state court judgment, its binding effect and the absence of any issue as to the controlling facts.

█ This court is not limited to a review of the state court judgment and record in its determination of dischargeability of a debt. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). There, the Supreme Court examined extrinsic evidence to determine whether there was adequate evidence to find willful and malicious conversion so as to except the debt from discharge. That state case had been settled and included a stipulation that the creditor would have judgment against the debtor. The court declined to apply principles of res judicata to the state court judgment in *Brown* so that the bankruptcy court might make an accurate determination whether the respondent had indeed committed the malicious conversion alleged by the petitioner. The question of whether a conversion was willful and malicious and therefore nondischargeable in bankruptcy is exactly the kind of question Congress intended that the bankruptcy court should resolve. The bankruptcy court may weigh all the evidence and is not bound by a review of the state court judgment and record when examining the dischargeability of a debt.

Here, the state court heard the evidence and rendered its judgment against the defendant. The New Jersey judge rejected the line of credit argument as a "sham", and found itself "incredulous". This line of credit argument is repeated here. But the device of summary judgment in the structure of modern federal practice as a procedural weapon means nothing if it is not suited to pierce sham claims and to resolve legal issues where the facts are undisputed. *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres Inc.*, 388 F.2d 272 (2d Cir. 1967), *cert. den.* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752.

█ It is well settled that for an act to be considered willful and malicious within the meaning of the bankruptcy law, the act need not be based on personal malice. *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). An act will be deemed willful if it is intentional and voluntary. *Id.* at 485, 24 S.Ct. at 508. The law implies malice if anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.[5] The phrase "willful and malicious injuries to the person or property of another" in 11 U.S.C. § 523(a)(6) do not necessarily connote ill-will or special malice. A wrongful act done intentionally without just cause or a lawful basis is sufficient. *In re Deveraux; Belsey v. Deveraux*, 150 Misc. 337, 269 N.Y.S. 127 (Sup.Ct.1934).

---

5. A looser standard of "reckless disregard" stemming from *Tinker* as a basis to determine "willful and malicious" had been relied on by previous cases under Section 17(a)(2) of the now repealed 1898 Act. This lesser standard has been rejected in the 1978 Code. See House Report No. 95–595, 95th Cong., 1st Session 363 (1977); S.Rep.No.95–989, 95th Cong., 2nd Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. This is the only element of the *Tinker v. Colwell* holding to be overruled. The rest of the Supreme Court's teachings remain the law.

The debtor's past actions in the instant case speak louder than his present protestations, and this court finds that these actions, based on review of the state court record, fall within the statutory exception to discharge of 11 U.S.C. § 523(a)(6). While a motion for summary judgment will ordinarily not lie if inferences involving intent and motive of the parties could be drawn, feigned issues as to an intent which common sense denies will not serve to put the party seeking summary judgment to the expense of a trial. The opinion of the state court, coupled with the testimony of the debtor himself, offer sufficiently convincing proof that the debt in question involves willful and malicious conversion of the bank's property and is therefore nondischargeable. Summary judgment for the plaintiff is granted. Submit an order.