In re Antonio CAPPARELLI, Debtor.

Michael McGOVERN, Plaintiff,

v.

Antonio CAPPARELLI, Defendant.

Bankruptcy No. 82 B 12028.
Adv. No. 82–6313A.

United States Bankruptcy Court,
S.D. New York.

Oct. 5, 1983.

Zervas and DeLuca, New York City, for debtor.

Robert N. Bressler, New York City, for plaintiff.

BURTON R. LIFLAND, Bankruptcy Judge.

## DECISION AFTER TRIAL ON OBJECTION TO DISCHARGEABILITY FILED BY CREDITOR

This matter is before the Court on an objection to the dischargeability of the debt owed to Michael McGovern ("Plaintiff") by Antonio Capparelli ("the debtor"). Plaintiff contends that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) which provides in part that a debtor may not be discharged from a debt when the

liability for that debt arose from a "willful and malicious injury by the debtor to another entity..."[1] Plaintiff asks this Court to determine whether a $10,000 award against the debtor based on a default judgment for malicious prosecution which survived a motion to reopen and vacate (lack of meritorious defense) is nondischargeable under Section 523(a)(6) of the Bankruptcy Code ("the Code").

The same underlying issues as those involved herein have been the subject of determination in three different forums. Recognizing the impact of the Supreme Court's holding in *Brown v. Felsen*[2], 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), Plaintiff McGovern chose wisely not to rest his instant attack on the dischargeability of the debt owed him solely on the res judicata and collateral estoppel effect of the prior court findings. Indeed, he possibly could have attempted to ground his assertion of nondischargeability solely on the specific finding of the Civil Court of the City of New York per Judge Richard Lane on August 24, 1981 in the judgment after inquest that the assault charge Capparelli had asserted against McGovern was "brazen and trumped up." Instead, McGovern put in another full case *ab initio* and again successfully proved that the debt owed him by the debtor arose from the debtor's willful and malicious prosecution of a bogus criminal assault charge against McGovern.

### I. Factual Background

At the trial before this Court on the dischargeability of the debt owed to McGovern by the Debtor, the following facts were adduced:

In January 1977, the debtor hired the plaintiff to hang wallpaper at the debtor's beauty salon. Plaintiff was to be paid $2,000 for his services. The debtor paid plaintiff in cash installments totalling

---

1. 11 U.S.C. § 523, in pertinent part, provides:
   (a) a discharge under Section 727, 1141 or 1328(b) of this Title does not discharge an individual debtor from any debt

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

2. *See* discussion of *Brown v. Felsen* at p. 363 *infra*.

$1,000. When plaintiff requested the balance, debtor offered $500 as payment in full, which offer plaintiff rejected.

Plaintiff repeatedly requested final payment from the debtor and was assured by the debtor that the balance would be "taken care of" sometime in September 1977. Approximately two weeks later, plaintiff was arrested, imprisoned and charged with assaulting the debtor.

The assault charge stems from a complaint filed with the District Attorney's office by the debtor alleging that the plaintiff assaulted him. However, upon a subsequent investigation, the Assistant District Attorney to whom the case was assigned moved to dismiss the charge against the plaintiff. The dismissal was predicated upon the Assistant District Attorney's findings that both the complainant (the debtor herein) and a purported witness, the debtor's cousin, had "lied" to her concerning the charges, and that the complainant had supplied his witness (in fact his cousin) with McGovern's description. Additionally, McGovern had provided the Assistant District Attorney with two unbiased alibi witnesses. Said charges were dismissed on March 7, 1978 in Criminal Court, New York County by Judge Milton L. Williams. Thereafter, plaintiff commenced a civil action against the Debtor alleging false arrest and malicious prosecution. As a result, the plaintiff after inquest secured a default judgment against the debtor for $10,000 plus interest from said date. Judge Richard S. Lane stated in his statement concerning judgment after inquest dated August 24, 1981 that plaintiff was entitled to $1,000 in compensatory damages and $9,000 in punitive damages for the "brazen trumped-up assault charge".

The debtor subsequently moved to vacate the default judgment. On January 7, 1982, Judge Henry L. Williams denied this motion, declaring that the debtor had failed to demonstrate a valid excuse for his nonappearance *and* that the debtor had failed adequately to demonstrate a meritorious defense. In his opinion, Judge Williams concluded that "[e]ven giving movant every benefit of the doubt concerning notice of the court appearances, there has not been presented an adequate demonstration of a meritorious defense, just a vague, brief, conclusory statement.... [D]efendant's [debtor herein] motion must in all respects be denied."

On October 15, 1982, debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 301. Plaintiff was listed as an unsecured creditor for $10,000 in the debtor's schedules. Following the Rules relating to adversary proceedings in Part VII of the Bankruptcy Rules,[3] plaintiff McGovern timely filed a complaint seeking judgment that the debt owed to him by the debtor was nondischargeable pursuant to 11 U.S.C. Section 523(a)(6).

## II. *Issue Presented*

At issue is whether the debtor brought the assault charge against the plaintiff in good faith or whether he intentionally fabricated the charge against plaintiff for his own malicious purposes.

For the following reasons, it is this Court's decision that Mr. Capparelli's debt falls within the ambit of § 523(a)(6) and is therefore nondischargeable.

## III. *Discussion of Law*

### A. *Effect of Findings Made in Prior Proceedings*

Plaintiff McGovern argues that Section 523(a)(6), which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity," controls this pro-

---

**3.** The rules cited above are contained in the Rules of Bankruptcy Procedure promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075 for use under the former Bankruptcy Act of 1898, as amended, and applicable under the Bankruptcy Code to the extent not inconsistent. *See* B.R.A. Sections 247, 402 and 405. As of August 1, 1983, these Rules have been replaced by the new Bankruptcy Rules promulgated to be used in conjunction with the Bankruptcy Code. However, the instant controversy is governed by the Rules formerly in effect.

ceeding. Plaintiff contends that the debtor's fabricated assault charge, which formed the basis for a malicious prosecution judgment, fulfills the standards of Section 523(a)(6) in that it constitutes a willful and malicious act that caused harm to the plaintiff and was committed without justification. In contrast, the debtor contends that the plaintiff did in fact assault him. He urges this Court in his Answer to disregard the default judgment entered against him on the underlying tort claims and requests a trial on the merits. Such trial *de novo* on the merits did in fact take place before this Court.

■ In determining the dischargeability of a judgment, this Court is not limited solely to reviewing the state court judgment and record. *See Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In *Brown,* the Supreme Court held that the doctrine of res judicata does not apply and does not bar relitigation of issues previously decided in determining whether a debt previously reduced to judgment is nondischargeable in bankruptcy. *Id.* at 138–39, 99 S.Ct. at 2212–13. The companion doctrine of collateral estoppel has likewise been held not to apply to a default judgment as in the instant case, because the relevant issue must have been actually litigated and determined in the prior proceeding.[4] *See also Trans World Airlines Inc. v. Hughes,* 449 F.2d 51, 58 (2d Cir.1971) (quoting *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955)); *In re Joseph,* 22 B.R. 319, 321 (Bkrtcy.E.D.N.Y.1982) (citing *Spil-*

*man v. Harley,* 656 F.2d 224, 228 (6th Cir. 1981)).

■ Accordingly, a bankruptcy court may entertain evidence beyond the prior court record and weigh such extrinsic evidence against the record to make an independent determination of the dischargeability question. *In re Eskenazi,* 6 B.R. 366, 369 (Bkrtcy.App. 9th Cir.1980). *See also Rahm v. Rahm,* 641 F.2d 755, 757 (9th Cir. 1981) (where the Court declared: "At most, a prior judgment establishes a *prima facie* case of nondischargeability which the bankrupt is entitled to refute on the basis of all relevant evidence").

■ While a prior default judgment is generally not determinative of the issue of nondischargeability in a bankruptcy case,[5] this court can neither wholly disregard another court's findings of fact nor delve into the underpinnings of that court's judgment to scrutinize those findings.[6] This court can, however, evaluate the lower court's findings in conjunction with any additional sources of evidence introduced at the trial or the adversary proceeding and weigh that evidence against the prior record to reach its own conclusions on the dischargeability question. *See In re Eskenazi,* 6 B.R. at 369. *See also In re Johnson,* 1 B.C.D. 48, 50 (S.D.Iowa 1973).

B. *Evidence Submitted Before This Court*

At the trial before this Court on the instant adversary proceeding, the plaintiff introduced documents and testimony de-

---

4. Courts have consistently held that the doctrines of res judicata and collateral estoppel do not preclude the bankruptcy court from determining the issue of nondischargeability where the judgment below was entered on default. *See In re McMillan,* 579 F.2d 289, 293 (3d Cir.1978); *In re Eskenazi,* 6 B.R. 366, 368 (Bkrtcy.App. 9th Cir.1980); *Franks v. Thomason,* 4 B.R. 814, 821 (Bkrtcy.N.D.Ga.1980); *In re Ianelli,* 12 B.R. 561, 563 (Bkrtcy.S.D.N.Y. 1981); *In re McKenna,* 4 B.R. 160, 162 (Bkrtcy. N.D.Ill.1980). *See also* Note, *Res Judicata and Collateral Estoppel in Bankruptcy Discharge Proceedings,* 37 Wash. & Lee L.Rev. 281, 283 n. 14 (1980).

5. *See* authority cited in footnote 4 *supra.*

6. Interestingly, in a discharge proceeding under § 17(a)(2) of the Act, the Court in *In re Stone,* 278 F. 566 (N.D.N.Y.1922), reasoned that in New York, a default judgment for malicious prosecution could not have been obtained without a showing of willful and malicious injury to the plaintiff. The District Court refused to examine the facts underlying the previous default judgment to establish that there was no willful and malicious injury, reasoning that "where the court has jurisdiction to render judgment, it cannot be impeached by collateral attack.... The remedy of the bankrupt is to move to open the default." *Id.* at 567.

scribing the previous state court determinations as detailed above. The debtor had yet another opportunity to present evidence that his assault complaint was not predicated on a willful and malicious act. In his answer, the debtor requested a trial on the merits. In spite of this request, the debtor failed to present either evidence or witnesses to implicate the plaintiff in the alleged assault. All the debtor offered was his own testimony, which had been previously described by the Assistant District Attorney as a "lie". When asked why the prosecutor would make such a definitive statement on the record before the criminal court judge, the debtor failed to provide a plausible explanation. In addition, the debtor failed to supply this Court with any explanation of or insight into why he provided his cousin with plaintiff's description and why his cousin, an eye witness, had "lied" to the Assistant District Attorney. Significantly, although the debtor claimed to have been assaulted in front of his cousin's business and listed his cousin as a corroborating witness, this witness was neither called to testify at any of the prior state court proceedings nor at the trial on this adversary proceeding. Further, no explanation was ever given as to why the debtor's cousin, a witness, failed to come to the aid of a badly beaten family member after the alleged altercation. Thus, the debtor's version of the so-called assault contains this glaring inconsistency which greatly impairs his credibility.

The only witness who testified on debtor's behalf was a purported friend and customer for 17 years. This witness testified to no first-hand knowledge of the alleged assault. Her testimony referred only to plaintiff's requests for money from the debtor and to visits she made to the debtor in the hospital after the alleged assault. Essentially, the debtor offered no evidence to connect the injuries he sustained to the alleged assault by the plaintiff and neither

hospital records nor doctor's records were introduced in evidence.

In contrast, the plaintiff introduced in evidence certified copies of the criminal court transcript of the dismissal, the civil court default judgment for malicious prosecution for $10,000 in plaintiff's favor, and the civil court order and opinion denying the debtor's motion to reopen and vacate the default judgment. These papers included the statement by the Assistant District Attorney made at the hearing dismissing the criminal charge against McGovern taken after interviewing the plaintiff's alibi witnesses that "[e]ach ... came to my office independently.... Neither of these witnesses ... has any more than a casual relationship with the defendant. Each seemed sincere and accurate in his account of the events of the night in question and placed the defendant far from the scene of the crime."

### C. Legal Standards for Nondischargeability of a Debt

In order to determine whether the injury the plaintiff sustained is a "willful and malicious" injury of the kind contemplated by § 523(a)(6), the creditor must prove the debtor's conduct was malicious as well as willful. See In re McCloud, 7 B.R. 819, 823 (Bkrtcy.M.D.Tenn.1980); In re Hawkins, 6 B.R. 97, 99 (Bkrtcy.W.D.Ky. 1980).

The Supreme Court in Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), provides a definition of "malicious injury". Tinker involved a state court judgment against a bankrupt for damages arising from criminal conversation with the plaintiff's wife. At issue was whether the bankrupt's acts were based upon a willful and malicious injury to the plaintiff's property rights and thus nondischargeable under Section 17(a)(2) of the Bankruptcy Act of 1898.[7]

---

7. See 11 U.S.C. § 35(a)(2) (repealed 1978). Section 17(a)(2) is the predecessor provision under the Bankruptcy Act of 1898 to § 523(a)(6) of the Code. Case law which arose under § 17(a)(2) has been used by some courts for guidance in interpreting § 523(a)(6). See, e.g., In re Hawkins, 6 B.R. 97; In re McCloud, 7 B.R. at 824 (discussing, inter alia, Tinker v. Colwell.

The Supreme Court in *Tinker* found that earlier Supreme Court decisions had not defined malice in terms of hatred or ill-will toward an injured party, but had implied malice from a showing of an unlawful, wrongful and tortious act done intentionally and without justification or excuse. *Id.* at 485. For the purpose of Section 17(a)(2), the Supreme Court concluded:

[W]e think a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception.

*Id.* at 487, 24 S.Ct. at 509.

The legislative history of the Bankruptcy Code reflects that Congress clearly intended to provide a standard of intentional and deliberate conduct, not merely reckless conduct, in promulgating Section 523(a)(6). H.R.Rep. No. 595, 95th Cong., 1st Sess. 308, 363 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 21, 77–79 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5862–65, 6318–20. *See also In re Glazer,* 10 B.C.D. 178, 25 B.R. 329 (Bkrtcy.App. 9th Cir.1982); *In re Friedenberg,* 12 B.R. 901, 905 (Bkrtcy. S.D.N.Y.1981); *In re McCloud,* 7 B.R. at 825.

The bankruptcy court in *Friedenberg,* relying on *Tinker,* declared that the law implies malice if anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people and injurious to another. The phrase willful and malicious injuries to the property of another in 11 U.S.C. § 523(a)(6) do[es] not necessarily connote ill-will or special malice. *Friedenberg,* 12 B.R. at 905.

■ Thus, case law and Congressional intent clearly indicate that a deliberate and intentional act committed without just cause with injurious consequences ensuing constitutes the requisite degree of malice and willfulness under Section 523(a)(6). In the instant case, the injurious consequences are those which might naturally be expected to flow from the debtor's fabrication of an assault. This debtor may be presumed to have intended injurious consequences when he, according to the Assistant District Attorney, "lied" to her about the alleged assault. From the foregoing facts, this Court finds that the debtor could reasonably have assumed that once he implicated the plaintiff regarding the crime of assault, the plaintiff would, at the very least, be detained and questioned and, more probably, plaintiff would be arrested, booked and jailed. This "brazen trumped-up" assault charge, in turn, caused the plaintiff to suffer the humiliation of a day in jail coupled with the indignity of an arrest, in addition to numerous court appearances that cost the plaintiff lost wages and time. The debtor's actions herein most assuredly qualify as a bold, deliberate, intentional injury committed without any justification.

■ This Court's conclusion that the debt owed McGovern is nondischargeable is reached after its full consideration of the policy rationale behind the dischargeability provision of Section 17(a)(2), the predecessor provision to Section 523 of the Code. That policy is to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start a fresh, free from the obligations and responsibilities consequent upon business misfortunes". *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (quoting *Williams v. United States Fidelity & Guarantee Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915)). To accomplish this "fresh start" policy, exceptions to discharge should be "strictly construed in favor of the bankrupt". *In re Huff,* 1 B.R. 354, 357 (Bkrtcy.D.Utah 1979) (citing *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)). The burden of proof is thus on the petitioning creditor to show that the debt is nondischargeable. *See* Rule 407, Rules of Bankruptcy Procedure; *In re Neumann,* 13 B.R. 128, 130 (Bkrtcy.E.D.Wis. 1981); *Family Finance Corp. v. Secchio,* 65 Misc.2d 344, 346, 316 N.Y.S.2d 794, 796 (N.Y.City Civ.Ct.1970). Cases deciding whether to allow an exception to discharge-

ability have required the creditor to fulfill this burden of proof by establishing the elements of the statute by "clear and convincing" proof. *See, e.g., In re Ianelli,* 12 B.R. at 564 (quoting *In re Lawrence,* 1 B.R. 402, 405 (Bkrtcy.S.D.N.Y.1979)).

■ Applying these legal standards to the instant facts, plaintiff has sustained his burden to provide clear and convincing evidence of debtor's deliberate, intentional, fabricated assault charge against him. Based on a thorough review of the transcript of the criminal court dismissal, the record and opinions of two state court judges, and the evidence put forth once again at the adversary proceeding before this Court, it is clear that the debtor indeed committed a "willful and malicious" injury within the meaning of § 523(a)(6). The conflicting, vague and inconclusive evidence submitted by the debtor [8] fails to rebut the substantial weight of the plaintiff's evidence as described above.

## IV. *Conclusion*

Plaintiff McGovern has sustained his burden of providing the clear and convincing proof required under 11 U.S.C. Section 523(a)(6) that debtor willfully and maliciously injured him. Accordingly, the debt owed to Mr. McGovern by virtue of this tort is nondischargeable. It is therefore ordered that this debt of $10,000.00 [9] plus all interest accruing from September 18, 1981 is nondischargeable under Section 523(a)(6).

Submit an order in conformity with this opinion.

8. Once a creditor has met his burden of providing "clear and convincing evidence" of the non-dischargeability of his debt, the burden then shifts to the debtor to rebut acts of nondischargeability. *See, e.g., Connelly v. Michael,* 424 F.2d 387, 389 (5th Cir.1970). In the instant case, the debtor failed to rebut these acts of nondischargeability established by this creditor.

9. The $10,000 judgment is comprised of $1,000 in compensatory damages and $9,000 in punitive damages. The debtor argues that if the debt is nondischargeable the exception applies only to the compensatory and not to the punitive damages. However, debtor supplies and this Court finds no authority for breaking down

a judgment award in this manner for purposes of ruling under § 523(a)(6). Moreover, the result requested by the debtor would be antithetical to the purpose underlying the exception to discharge contained in Section 523(a)(6) and thus would be "unfair and unjust, allowing the [debtor] to avoid responsibility for malicious injury by filing bankruptcy." *Dutton v. Schwartz,* 21 B.R. 1014, 1017 (D.C.D.Mont. 1982). In fact, one court has recognized that punitive damages are a proper part of an award for willful and malicious injury which survives bankruptcy and are to be calculated pursuant to the provisions of state law. *See In re Glazer (Glazer v. Alley),* 10 B.C.D. 178, 25 B.R. 329 (Bkrtcy.App. 9th Cir.1982).