In re Maurice J. SALEM a/k/a Maurice J. Neshewat, Debtor.

Michael J. Neshewat, Plaintiff–Appellee,

v.

Maurice J. Salem, a/k/a Maurice J. Neshewat, Defendant–Appellant.

Bankruptcy No. 00–30037 (CGM).

No. 02 CIV.8040 (WCC).

United States District Court, S.D. New York.

March 5, 2003.

Betancourt, Van Hemmen & Greco (John Greco, Esq., Virginia A. Harper, Esq., of counsel), New York City, for Plaintiff–Appellee.

Maurice J. Salem, Wappingers Falls, NY, pro se.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Defendant–Appellant Maurice J. Salem, appearing pro se, appeals to this Court pursuant to 28 U.S.C. § 158(a)(1) from an order of the Bankruptcy Court (Hon. Cecelia G. Morris, U.S.B.J.) dated August 8, 2002 (the "8/8/02 Order"), which ruled appellee Michael Neshewat's claim against Salem to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6). In addition, Salem appeals the Bankruptcy Court's denial of his motion for summary judgment, arguing that Neshewat's claim was barred by res judicata, collateral estoppel and lack of subject matter jurisdiction in the state court. Further, Salem contends that in ruling that the debt was nondischargeable, the Bankruptcy Court erred because it relied on a state court default judgment and because the requirement of "willful and malicious injury" was not met. We conclude that the *Rooker/Feldman* doctrine prevents this Court from reversing or modifying a state court judgment and that the Bankruptcy Court properly relied on the state court judgment, and in doing so, properly found that the "willful and malicious injury" standard was met, and therefore affirm the 8/8/02 Order.

## BACKGROUND [1]

This law suit is one of many between brothers Salem and Neshewat. In 1996, Neshewat filed in New York State Court an action against Salem for malicious prosecution, abuse of process, defamation, libel and slander. A default judgment was entered against Salem. After a damages inquest, the state court awarded damages in the amount of $166,884.86. Salem filed for bankruptcy in 2000 and later that year Neshewat commenced an adversary proceeding in the Bankruptcy Court seeking a determination that the judgment against Salem was a nondischargeable debt. The Bankruptcy Court conducted a trial and found that Neshewat had proven by a preponderance of the evidence that Salem caused willful and malicious injury to him, and therefore concluded that the debt was nondischargeable. This appeal, over which this Court has jurisdiction pursuant to 28 U.S.C. § 158, followed.

---

1. The substantive facts of this case are fully set forth in the Bankruptcy Court's opinion and need not be repeated here. Only procedural facts will be recounted.

## DISCUSSION

### I. *Standard of Review*

■ On appeal, a bankruptcy court's conclusions of law are reviewed de novo. FED. R. BANKR. 8013; *Federal Deposit Ins. Corp. v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 130 (2d Cir.1992); *Peters v. Hennenhoeffer (In re Peters)*, 133 B.R. 291, 294 (S.D.N.Y.1991), *aff'd*, 964 F.2d 166 (2d Cir.1992) (per curiam). However, FED. R. BANKR. 8013 provides that, "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." *See also Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1388 (2d Cir.1990); *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988 (2d Cir.1990).

### II. *Denial of Salem's Cross Motion for Summary Judgment*

During the bankruptcy proceeding, Salem cross moved for summary judgment, arguing that res judicata should have barred the state court default judgment because the same claim was previously dismissed on the merits. (Appellant Br. at 12, Ex. R–164.) In addition, Salem argued that Neshewat's state court claim was barred by collateral estoppel because the transactions and occurrences that gave rise to the New York State court action were litigated in a Michigan federal district court. (*Id.* at 13, Ex. R–165) Both parties' motions for summary judgment were denied.

■ The issue before this Court is whether the Bankruptcy Court properly denied summary judgment. We conclude that it did. The validity and enforceability of the state court judgment was not an issue for the Bankruptcy Court to decide. *In re Krautheimer*, 210 B.R. 37, 52 (Bankr.S.D.N.Y.1997). Whether the state court judgment was right or wrong as a matter of fact or law, the judgment should have been and was accorded full faith and credit by the Bankruptcy Court. *Id.* The issue before the Bankruptcy Court was not whether the state court decision was correct, but whether the state court judgment was dischargeable under § 523(a)(6). *Id.*

■ Under the *Rooker–Feldman* doctrine, "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998) (reviewing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)); *Sundwall v. Leuba*, No. Civ. A. 300 CV 1309, 2001 WL 58834, at *6 (D.Conn. Jan.23, 2001); *Bell v. New York*, No. 99 Civ. 5809, 2000 WL 1273637, at *3, 2000 LEXIS 12854, at *10 (S.D.N.Y. Sep. 6, 2000). The *Rooker/Feldman* doctrine is a form of abstention that applies to both district courts and bankruptcy courts. *In re Best Payphones, Inc.*, No. 01–15472, 2002 WL 31767796, at *6 (Bankr.S.D.N.Y. Dec.11, 2002). Moreover, "even where a state court judgment is not being appealed directly, 'the District Court is in essence being called upon to review the state court decision' where 'claims presented to a ... District Court are inextricably intertwined with the state court's determination.'" *Bell*, 2000 WL 1273637, at *3, 2000 LEXIS 12854, at *10 (citing *Feldman*, 460 U.S. at 462, 103 S.Ct. 1303).

■ Inextricably intertwined "means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a

state proceeding (as either plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir.1996). In sum, "a federal claim is 'inextricably intertwined' with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Bell*, 2000 WL 1273637, at *4, 2000 LEXIS 12854, at *12 (citations omitted).

■ Salem appealed the state court judgment to the Appellate Division Second Department, which dismissed the appeal. (Appellant Br., Ex. R–184.) He then applied for leave to appeal to the New York State Court of Appeals, which was denied. (*Id.*) Salem then effectively asked the Bankruptcy Court in his motion for summary judgment to reverse the state court decision, which is "precisely the sort of action that *Rooker–Feldman* is designed to prohibit." *Sundwall*, 2001 WL 58834, at *7. Salem's motion for summary judgment is "inextricably intertwined" with the state court judgment as granting the motion would effectively reverse the state court judgment. Neither the Bankruptcy Court nor this District Court has jurisdiction to declare invalid the state court's judgment.

### III. *State Court Jurisdiction*

In his Memo of Law presented to this Court, Salem argued that the state court judgment is void because the court that entered it lacked subject matter jurisdiction. Salem argues that Justice Bernhard vacated a default judgment against Salem and denied Neshewat's repeated motions to reargue. (Appellant Br. at 17.) He further contends that when Justice Bernhard retired, the case was assigned to Justice Pagones, who subsequently granted Neshewat's motion to reargue and reinstated the default judgment. (*Id.*; Bankr. Tr. at 7.) Salem argues that Justice Pagones did not have subject matter jurisdiction to "reverse" Justice Bernhard's vacation of the default judgment.

Some courts have held that an exception to the *Rooker/Feldman* doctrine exists where the state court judgment is void ab *initio*. *In re James*, 940 F.2d 46, 52 (3rd Cir.1991); *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir.2000). However, these cases only recognized state court judgments as void ab *initio* in bankruptcy cases where state court actions violated the automatic stay. *Schmitt v. Schmitt*, 165 F.Supp.2d 789, 796 (N.D.Ill.2001); *Drewicz v. Dachis*, No. 01 C.1928, 2002 WL 849810 at *3 (N.D.Ill. May 2, 2002). The *In re James* court did in fact indicate that a state court judgment could be void ab *initio* based on a lack of personal or subject matter jurisdiction, but only in dicta. 940 F.2d at 51. On the contrary, other courts have held that no exception to the *Rooker/Feldman* doctrine exists when there is a challenge to the state court's personal jurisdiction or subject matter jurisdiction. *Schmitt*, 165 F.Supp.2d at 796–97; *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir.1972). The *Schmitt* court held that state courts are "perfectly well qualified" to determine whether service of process was constitutional and added that it would be inappropriate for a federal court to "second-guess" that determination. 165 F.Supp.2d at 797. Similarly, the *Lubben* court stated that the concept of a void judgment should be narrowly construed and went on to explain that "[a] court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void." 453 F.2d at 649. Further, a Southern

District case, and in fact the only case in the Second Circuit that addresses this issue, stated that the results of a state court judgment cannot be reconsidered by a federal court where the state court would not vacate the judgment as for fraud or lack of jurisdiction. *In re Sletteland,* 260 B.R. 657, 668 n. 6 (Bankr.S.D.N.Y.2001).

Salem unsuccessfully appealed the state court judgment all the way to the Court of Appeals. The only federal court to which Salem can resort at this point is the United States Supreme Court. Because we do not recognize a challenge to the state court's subject matter jurisdiction as an exception to the *Rooker/Feldman* doctrine, we have no jurisdiction to declare the state court judgment void.

## IV. *The Bankruptcy Court's Reliance on the State Court Decision*

Salem argues that the Bankruptcy Court improperly relied on the state court's decision to establish the elements for abuse of process and malicious prosecution because the state court decision was based on a default judgment, not on the merits.[2] (Appellant Br. at 18.) We nevertheless conclude that the Bankruptcy Court properly relied on the state court judgment.

■ Generally, a bankruptcy court is expected to examine the record of a prior state suit when determining whether a debt previously reduced to judgment is

dischargeable. In fact, the United States Supreme Court has held that in determining whether a debt previously reduced to judgment is discharged in bankruptcy, the doctrine of res judicata is inapplicable and does not bar reexamination of the issues previously decided. *Brown v. Felsen,* 442 U.S. 127, 138–39, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The bankruptcy court is not confined to review of the record from the prior state court proceeding. *Id.* at 132, 99 S.Ct. 2205. The court acknowledged the doctrine of collateral estoppel, but declined to rule on how it should be applied in this context. *Id.* at 138, n. 10, 99 S.Ct. 2205. However, a long line of New York cases have established that collateral estoppel is inapplicable to default judgments because the issues have not been actually litigated.[3] *In re Iannelli,* 12 B.R. 561, 563 (Bankr.S.D.N.Y.1981); *In re Supple,* 14 B.R. 898, 903 (Bankr.D.Conn.1981); *In re Joseph,* 22 B.R. 319, 321 (Bankr.E.D.N.Y. 1982); *In re Capparelli,* 33 B.R. 360, 363 (Bankr.S.D.N.Y.1983); *In re Billings,* 94 B.R. 803, 808 (Bankr.E.D.N.Y.1989).

■ Thus, a bankruptcy court may review evidence beyond the prior court record and evaluate all the evidence in order to determine independently the question of dischargeability. *Capparelli,* 33 B.R. at 363. A prior default judgment is generally not determinative of the issues of nondischargeability in a bankruptcy case. *Id.* However, a bankruptcy court must careful-

---

2. We assume that Salem meant the Bankruptcy Court improperly relied on the state court's decision to establish the elements of "malicious and willful," the standard for nondischargeable debts as the Bankruptcy Court in no way retried Salem's liability for malicious prosecution and abuse of process.

3. Interestingly, a bankruptcy court in the Eastern District of New York gave res judicata effect to the malicious prosecution judgment of a state court during a proceeding to determine whether that judgment was nondis-

chargeable. *In re Gabrielson,* 1 B.R. 563, 564 (Bankr.E.D.N.Y.1979). In *Gabrielson,* plaintiffs obtained a default judgment against the bankrupt in state court in their action to recover damages for malicious prosecution. *Id.* The *Gabrielson* court determined that because the mental state required for malicious prosecution under New York state law was narrower than that required under the Bankruptcy Act, res judicata effect should be given to the state court judgment. *Id.*

ly balance the weight given to the prior findings and to extrinsic evidence. *Id.* As the *Capparelli* court stated, "... [T]his court can neither wholly disregard another court's finding of fact nor delve into the underpinnings of that court's judgment to scrutinize those findings." *Id.* Here, the Bankruptcy Court examined the state court record in addition to holding its own trial. After examining all the evidence before it, the Bankruptcy Court properly used the state court record to determine dischargeability as set forth in *Brown.*

### V. Standard for "willful and malicious injury" Under 11 U.S.C. § 523(a)(6)

 Exceptions to discharge under 11 U.S.C. § 523 include debts arising from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6); *In re Krautheimer,* 241 B.R. 330, 340 (Bankr. S.D.N.Y.1999) ("The purpose of § 523(a)(6) is to avoid rewarding blameworthy debtors through discharge."). The Supreme Court has held that the burden is on the party claiming non-dischargeability. The appropriate standard of proof is a "preponderance of the evidence." *Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Cmty. Mut. Sav. Bank v. Landrin (In re Landrin),* 173 B.R. 307, 310 (Bankr.S.D.N.Y.1994). Courts have repeatedly stressed that the § 523(a) exceptions to discharge must be strictly construed in favor of the debtor in order to comport with the "fresh start" policy underlying the Bankruptcy Code. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Household Fin. Corp. v. Danns (In re Danns),* 558 F.2d 114, 116 (2d Cir.1977); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio),* 91 F.3d 296, 300 (2d Cir.1996).

 The terms "willful" and "malicious" are separate elements that must

both be satisfied. *Krautheimer,* 241 B.R. at 340. The word "willful" means deliberate or intentional. *Id.* The Supreme Court has held that the word "willful" modifies the word "injury" so that the debtor must have intended to cause the injury, not merely to perform the acts which caused it. *Kawaauhau v. Geiger,* 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Supreme Court did not address the word "malicious," but the Second Circuit interpreted malicious to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti,* 94 F.3d 84, 87 (2d Cir.1996). Further, the *Stelluti* court determined that malice may be implied by the acts and conduct of the debtor in the context of the surrounding circumstances. *Id.* at 88; *In re Mitchell,* 227 B.R. 45, 51 (Bankr.S.D.N.Y.1998) ("Malice is implied when 'anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.' ").

Based on the above, Neshewat must prove by a preponderance of the evidence that: 1) Salem deliberately and intentionally caused the resulting injury to Neshewat; and 2) Salem acted with malice. Here, the state court judge found sufficient injury to warrant damages in the amount of $166,884.86. The issue is whether Salem's actions were willful and malicious, thereby creating a debt which is nondischargeable in bankruptcy.

 Neshewat proved by a preponderance of the evidence that Salem willfully and maliciously injured him. Specifically, Neshewat proved that Salem injured him by participating in criminal complaints, civil suits and prosecution against Neshewat including two state court actions, at least one proceeding in surrogate's court, voluntary testimony in a Michigan federal

court preliminary hearing and over 100 phone calls to the Town of East Fishkill Police Department lodging complaints against Neshewat.[4] (Bankr.Tr. at 33.) In one such phone call, Salem claimed that Neshewat improperly obtained title to Salem's 1987 Cadillac Catalca by forging Salem's signature when in fact Salem later admitted that it was likely he signed the transfer document himself. (*Id.* at 27, 31.) Salem also admitted he knew that an accusation such as this could result in jail time and the loss of Neshewat's medical license. (*Id.* at 28.) In addition, Salem was arrested for falsely reporting this incident. (*Id.* at 31.) Salem filed a similar complaint against Neshewat claiming that Neshewat forged Salem's signature on the transfer of a 1989 Mercedes Benz ("Mercedes"). (Appellant Br., Ex. R–336.) In fact, Salem brought a lawsuit in the Dutchess County Supreme Court in 1990 claiming that Neshewat fraudulently obtained title by forging Salem's signature on a document transferring title to Neshewat. (*Id.*, Ex. R–240.) Judge Beisner dismissed the claim against Neshewat stating that Neshewat did not forge the document, nor fraudulently transfer title.

In 1990, Neshewat reported that the Mercedes had been stolen. (*Id.*, Ex. R–410.) In 1993, it was found to be in the possession of Salem's wife. (*Id.*, Ex. R–411.) Neshewat was arrested and prosecuted in Michigan for making a false police report and for insurance fraud. (*Id.*) Salem traveled to Michigan voluntarily to testify that Neshewat fraudulently obtained title to the Mercedes when it had already been found by a New York state court that Neshewat never forged the title

document or fraudulently transferred title to himself. (*Id.*, Ex. R–240.) Further, Salem admitted that he was aware his brother had title to the Mercedes from May 1989 through the end of 1992. (Bankr.Tr. at 23.)

In sum, Salem voluntarily went to Michigan to testify that Neshewat fraudulently obtained title to the Mercedes, after Salem had already lost on that claim in a New York state court, knowing that conviction on that charge would lead to loss of Neshewat's medical license. In addition, the evidence submitted by Salem fails to rebut the substantial weight of Neshewat's evidence.[5] Salem did not merely act intentionally in ways that injured Neshewat; Salem deliberately intended to injure his brother. Salem knew that Neshewat was the rightful owner of the Mercedes but continued to bring and prosecute law suits designed to get back the Mercedes. The continuous litigation caused Neshewat to spend substantial sums on attorney's fees, court fees and travel expenses; in addition, he lost substantial income. It is therefore clear that Salem's debt arose from willful and malicious injury and is consequently nondischargeable.

## CONCLUSION

For the above reasons, Judge Morris's August 8, 2002 Order determining that Maurice Salem's debt was nondischargeable, and denying his cross motion for summary judgment, is affirmed.

SO ORDERED.

---

4. The *Capparelli* court found a debt nondischargeable based on only one false report of an assault. 33 B.R. at 365.

5. Salem's defense that he was acting as executor of his mother's estate and that he had a duty to retrieve property of the estate is mis-

placed. An executor who commits a tort will be prosecuted in his or her individual capacity because the individual has clearly failed in the role of executor. *Van Slooten v. Dodge,* 145 N.Y. 327, 331, 39 N.E. 950 (1895).