**In re John Harding GREER, Jr., Debtor.**

**Harvey R. McELHANON, Jr. and Doreen T. McElhanon, his wife, Plaintiffs,**

v.

**John Harding GREER, Jr., Defendant.**

**Bankruptcy No. B 76–1840.**
**Adv. No. C.**

United States Bankruptcy Court,
D. Arizona.

June 22, 1982.

Jack Evans, Phoenix, Ariz., for plaintiffs.

Dennis J. Wortman, Phoenix, Ariz., for defendant.

## OPINION AND ORDER

VINCENT D. MAGGIORE, Bankruptcy Judge:

The facts in this case are undisputed. On October 13, 1973 the Plaintiffs obtained judgment against Charles Gilbert Harris in the amount of $200,000.00. On the day judgment was entered, Harris transferred his only asset to Greer consisting of Harris' stock in Southwest Restaurant Systems, Inc., an Arizona corporation. Thereafter, Southwest Restaurant Systems, Inc. filed a voluntary petition under Chapter XI of the Bankruptcy Act. The Chapter XI proceedings were ultimately converted to a Chapter X proceeding. A plan of reorganization was presented to the Bankruptcy Court which required the approval of the stockholders. Accordingly, a full scale trial was held in the Bankruptcy Court to determine whether Harris or Greer was the legal owner of the stock transferred by Harris to Greer on October 13, 1973. Both Greer and Harris actively participated in the trial and testified as witnesses. After the trial the Honorable Edward E. Davis issued a Report of Special Master Regarding Stock Ownership including Findings of Fact and Conclusions of Law, finding, inter alia, that the purported transfer from Harris to Greer

was, in fact, void. The Bankruptcy Court found that the purported transfer of Harris' stock to Greer was made without fair consideration at a time when Harris was insolvent, which was known to Harris and Greer, and was made with the intent to defraud and hinder the Plaintiffs as judgment creditors in the collection of their judgment. After the Bankruptcy Court set aside the fraudulent transfer from Harris to Greer the Plaintiffs levied execution on the Harris stock in Southwest. Unfortunately, the Harris stock was, by that time, worthless, as a result of which the Plaintiffs' judgment remained unsatisfied.

After the Bankruptcy Court determined that Greer had engaged in a fraudulent transfer with the intent to defraud and hinder the Plaintiffs in the collection of their judgment, the Plaintiffs instituted an action in State Court against Greer and the two lawyers who participated in the transfer. The Plaintiffs, in their State Court Complaint, alleged that the two lawyers and Greer did maliciously and with the intent to injure Plaintiffs, conspire together by engaging in a plan, scheme, or artifice to deceive, hinder, delay and defraud the Plaintiffs McElhanon from collecting their judgment against Harris.

After the Plaintiffs commenced the State Court action the Defendant filed his Voluntary Petition in Bankruptcy. The Plaintiffs then filed an Application to Lift the Stay Order issued by the Bankruptcy Court at the time the Defendant filed bankruptcy. On February 8, 1980 this Court, after a hearing—during which the Defendant's attorney stipulated that the case should be tried in the State Court—entered an order lifting the stay order.

In the State Court action, at the conclusion of the case, the Trial Judge directed a verdict against the Defendant Greer upon the ground that Greer was collaterally estopped to deny he had participated in a fraudulent conveyance for the purpose of hindering, delaying and defrauding McElhanons' rights as a judgment creditor based upon the judgment previously entered by the Bankruptcy Court in the proceedings to determine the stock ownership. The State Court submitted the case to the jury with respect to liability and damages as the same related to the two lawyers. The jury, in the State Court action, then returned a verdict against Greer and the two lawyers in the amount of $286,120.00.

The Plaintiffs, in these proceedings, filed a Motion for Summary Judgment asking this Court to determine that the State Court judgment is not dischargeable under § 17a(8) of the Bankruptcy Act. The Plaintiffs filed various documents in support of their Motion. Those documents consist, inter alia, of copies of the Report of Special Master Regarding Stock Ownership Including Findings of Fact and Conclusions of Law, the State Court Complaint, the State Court judgment, an Affidavit by the Plaintiffs' attorney who was the attorney for the Plaintiffs in the State Court proceedings, and, copies of the jury instructions which were used in the State Court proceedings. Additionally, the Plaintiffs requested that the Court take judicial notice of the prior bankruptcy proceedings.

Greer has not filed or otherwise presented any documentary or other evidence in opposition to the Plaintiffs' Motion for Summary Judgment nor has he controverted the undisputed facts recited by this Court.

The Plaintiffs, in their Motion for Summary Judgment, contend that the doctrine of collateral estoppel is applicable. This Court agrees with the Plaintiffs' contention based upon the authorities hereinafter discussed.

In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) the United States Supreme Court described in a footnote how the doctrine of collateral estoppel would work, if applicable, in a dischargeability case:

"If, in the course of adjudicating a state-law question, a state court shall determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court."

As hereinafter discussed, the State Court did determine factual issues using standards identical to those of § 17a(8). Furthermore, the 1970 amendments to the Bankruptcy Act do not constitute a "countervailing statutory policy" against the Bankruptcy Court giving collateral estoppel effect to a prior State Court judgment.

For a liability to be excepted from discharge under § 17a(8), it must arise from conduct that is both willful and malicious. The word "willful" means nothing more than intentionally doing an action which necessarily leads to injury. The injury is malicious if it arises out of a willful act done wrongfully and without just cause or excuse. Personal hatred, spite or ill will are not required in order to find a willful and malicious injury under § 17a(8). Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. 1 A Collier on Bankruptcy, p. 1650.4 (14th Edition); *Peters v. U. S.*, 177 F. 885 (7th Circuit, 1910).

In examining the allegations of the Plaintiffs' Complaint in the State Court and the jury instructions given by the Trial Court to the jury, it is apparent to this Court that the basis of the State Court judgment resulted from a willful and malicious injury within the meaning and intent of § 17a(8).

After carefully reviewing all of the documentation submitted by the Plaintiffs it conclusively appears that Greer has been afforded two opportunities to litigate his liability. The first opportunity was afforded him in the initial trial in the Bankruptcy Court. The second opportunity was afforded him in the State Court trial. In both trials the basis of liability wholly comported with the essential elements of both a State cause of action for a willful and malicious injury to the property of another and those required to be proved by the Plaintiffs in an action for the non-dischargeability of debt under § 17a(8) of the Bankruptcy Act. *In the Matter of Frahm*, 23 C.B.C. 332 (Bkrtcy. E.D.Wis.); *Matter of Herman*, 6 B.R. 352, 353 (S.D.N.Y.1980); *Matter of Ross*, 602 F.2d 604 (3rd Cir. 1979).

This Court recognizes that it is vested with the exclusive jurisdiction to determine the non-dischargeability of the Plaintiffs' debt. However, we have done no more than apply estoppel with respect to the Plaintiffs' State Court action and then independently applied the facts to reach our determination that the bankrupt's liability to the Plaintiffs is not dischargeable.

As stated in the *Matter of Herman*, supra, "this approach does not, in any manner, frustrate or dissipate the objectives of the 1970 amendments to § 17 of the Bankruptcy Act," and "to contenance relitigation here, under the circumstances present in this case, simply because this Court is vested with exclusive jurisdiction to determine the non-dischargeability of the debtor, would merely exalt form over substance, totally dilute the efficacy of the theory of collateral estoppel, and result in an abandonment of 'good sense' ".

The Defendant has not just had the opportunity to litigate but has actually litigated his case in two separate actions, both actions employed the same criteria as would be applied by the Bankruptcy Court in determining whether he committed a willful and malicious injury against the Plaintiffs' property. No attack has been made on the proceedings themselves. The Defendant had a fair chance to present his case and did so, was fully heard, and the contested issues were decided against him. Accordingly, this Court believes and does find that the doctrine of collateral estoppel is applicable, and that Plaintiffs' judgment is non-dischargeable.