In the Matter of James SPONHEIM, Debtor.

Nicholas THEMALAKES, Plaintiff,

v.

James SPONHEIM, Defendant.

Bankruptcy No. 83–1718.
Adv. No. 83–839.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 10, 1984.

James A. Helinger, Jr., Clearwater, Fla., for plaintiff.

Family Legal Centers, Lakeland, Fla., for defendant.

## MEMORANDUM OPINION

### IN RE CLAIM OF NON–DISCHARGEABILITY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case, and the matter under consideration is a claim of non-dischargeability, asserted by Nicholas Themalakes (the Plaintiff), who instituted the above-captioned adversary proceeding. The claim of non-dischargeability of a debt

allegedly owed to the Plaintiff by James Sponheim (the Debtor/Defendant), is based on the contention that it represents a liability of the Debtor resulting from a willful and malicious injury to the person of the Plaintiff, therefore, it should be excepted from the overall protective provisions accorded by the general bankruptcy discharge, by virtue of § 523(a)(6) of the Bankruptcy Code.

The record, as established at the final evidentiary hearing, reveals the following facts germane and relevant to the matters under consideration and they can be briefly summarized as follows:

At the time pertinent, the Defendant/Debtor was a duly licensed bail bondsman by the State of Florida, residing in Dade City, where he maintained his place of business and operated as a bail bondsman, basically in Pasco County, Florida. In 1978 the Plaintiff, apparently a citizen of Greece, although a resident of Tarpon Springs, Florida, was arrested and charged with issuing two checks, both of which were dishonored by the drawee banks for insufficient funds. The Plaintiff was released on a bond pending trial. The bond, in the amount of $2,500 was posted by the Defendant. Since the Plaintiff failed to appear at the duly scheduled trial date, the bond posted by the Defendant was forfeited by the Court.

It further appears from the record that the Defendant published a flyer and caused the same to be posted at several police stations in Pasco County, including at the police station of Tarpon Springs, Florida. The poster offered a $200.00 reward to anyone who would apprehend and deliver the Plaintiff to the Defendant. It appears that the Plaintiff left the country shortly after his release on bond and remained outside of the country, apparently in Greece, until he returned the following year to Tarpon Springs, Florida in March.

It further appears that on March 23 he was spotted by a police officer of the City of Tarpon Springs who recognized him from the flyer posted at the police station. While it is unclear that the police officer did, in fact, arrest the Plaintiff, it is without dispute that he was taken by the officer to the police station who, upon their arrival, immediately contacted the Defendant by phone and inquired whether or not the reward offered by the Defendant, as stated in the flyer, was still outstanding and whether or not it will be still honored. Having been assured that the reward was still outstanding and will be honored, the officer told the Defendant that he had the Plaintiff in custody and would hold him until the Defendant arrives and takes him in custody. Based on this assurance, the Defendant and one of his assistants immediately left Dade City and headed toward Tarpon Springs. They arrived at the Tarpon Springs police station shortly before 1:00 P.M. Upon their arrival, the Plaintiff, who up to that point was not physically restrained, was immediately handcuffed and placed in leg irons and put in the car driven by the Defendant. The journey took at least an hour and a half, covering a distance which ordinarily would not take more than one-half of that time. Testimony supports the fact that the Defendant stopped during the journey for lunch or for refreshments. In any event, there is no doubt that during this stop, Plaintiff was left in the car still shackled. Upon their arrival in Dade City, the Plaintiff was kept in chains in the office of the Defendant, although there is evidence, if believed, that he was at times permitted to move around; he was permitted to use a bathroom and, most importantly, make some phone calls.

This last fact assumes significance, especially in light of what transpired the following morning. It appears that he was permitted to place phone calls to some of his friends in New York in order to raise sufficient funds to pay off the Defendant for his loss resulting from the forfeiture of the bond. In addition, the following morning the Plaintiff was driven by the Defendant to a restaurant where he was served breakfast, which he had to consume handcuffed and, thereafter, he was driven to a bank in order to open a joint bank account in his name and the name of the Defendant, for

the purpose of receiving funds to be transferred by friends of the Plaintiff from New York in order to pay off the Defendant. It is unclear whether or not this was really ever accomplished. Be as it may, it is clear that it was not until the evening following his apprehension by the police officer, later by the Defendant and his assist, when he was ultimately turned over to the police in Dade City, and incarcerated and kept in custody for bail jumping.

■ Based on the following facts, the Plaintiff claims that he is entitled to obtain a declaration of non-dischargeability of his claim against the Defendant by virtue of § 523(a)(6) of the Bankruptcy Code, which in pertinent parts, provides as follows:

§ 523 *Exceptions to Discharge*

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

To except a debt from discharge under § 523(a)(6), the wrongful act must have been both willful and malicious. The term willful means deliberate or intentional. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The act is malicious if the injury arises from a willful act done wrongfully and without just cause or excuse. *McElhanon v. Greer (In re Greer)*, 21 B.R. 763 (Bkrtcy.D.Ariz.1982). Hatred, spite or ill-will is not required to support a finding of non-dischargeability under § 523(a)(6). *Webster City Production Credit Assoc. v. Simpson (In re Simpson)*, 29 B.R. 202, 212 (Bkrtcy.N.D.Iowa 1983).

■ It is clear that the right of a bailbondsman to arrest his principal after the bond has been forfeited is specifically granted by Chapter 903.29 Fla.Stat. It is equally clear, however, that this right to arrest the Defendant was granted solely for the purpose of surrendering the Defendant to the authorities. While the Statute does not use the term "promptly surrender", it is evident that the Statute was never designed by the Legislature to authorize bailsbondmen to keep defendants in custody for the purpose of extorting monies and for an unreasonable length of time.

In light of the foregoing, the conclusion is inescapable and this record leaves no doubt that the Plaintiff was effectively incarcerated and kept in custody against his wishes from 1:30 p.m., March 23, 1981 until he was surrendered to the authorities at least as late as 7:00 p.m. the following day or approximately 30 hours. While there is conflict in the testimony as to any threats on his life, it is clear that the purpose of this detention, which is totally unwarranted, was done solely for the purpose of enabling the Plaintiff to obtain funds to pay the Defendant for the amount of monies the Defendant had to pay when the bond posted by him was estreated. Contrary to the contention of the Defendant, this Court rejects the proposition that he was kept in chains and handcuffs at times at his request and the intimation by the Defendant that he preferred to remain in custody of the Defendant rather than go to jail must be rejected as being absurd.

■ Neither research of counsel nor independent research found any authorities to support the proposition that false imprisonment without physically touching a person would be the type of liability Congress intended to exclude from the overall protective provisions of the discharge by § 523(a)(6). This Court is satisfied, however, that under the facts of this case, there is no doubt that the Plaintiff did suffer injuries to his person as the result of the unjustified forceful detention and actual incarceration for a totally unreasonable length of time solely for an illegitimate purpose.

This being the case, this Court is satisfied that he was falsely imprisoned and restrained against his wishes in excess of 30 hours; this conduct was done for the express purpose of extorting funds from him to buy his freedom and, therefore, the claim of non-dischargeability has been es-

tablished with the requisite degree of proof.

■ Unlike the pre-Code law, c.f. § 17(c)(3) or pre-Code Bankruptcy Rule 409(b), neither the Code nor the Bankruptcy Rules require this Court to proceed and render judgment after it has determined a non-dischargeability characteristic of the liability if no pre-petition judgment has been entered. This being the case, it is appropriate to modify the automatic stay in order to permit the Plaintiff to liquidate its claim which is now declared to be non-dischargeable by this Court in a non-bankruptcy forum.

A separate final judgment will be entered in accordance with the foregoing.