In re Hubert Earl JENKINS and Jewell Deloress Jenkins, Debtors.

Gerald T. LANE, Plaintiff,

v.

Hubert Earl JENKINS, Defendant.

Bankruptcy No. 92–15305–8P7.

Adv. No. 93–488.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 2, 1994.

Josiah E. Hutton and Phillip E. Kuhn, Winter Haven, FL, for plaintiff.

Thomas Joel Chawk, Lakeland, FL, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is the dischargeability, vel non, of the liability owed by Hubert Earl Jenkins (Debtor) to Gerald T. Lane (Lane) who commenced this adversary proceeding. The claim of non-dischargeability is asserted pursuant to 11 U.S.C. § 523(a)(6) and is based on the allegation of Lane that the Debtor's liability to Lane resulted from willful, malicious injury to Lane's property. The relevant facts as established at the final evidentiary hearing are as follows:

At the time relevant, Lane and the Debtor were engaged as equal partners operating a citrus nursery initially under the name of Heartland Citrus and later under the name of Ridge Citrus Nurseries. The objective of the partnership was to grow citrus trees by initially planting seedlings which were grafted to grow to budding trees in 18 months and ultimately, after 3 years, reach a crop-producing state. The trees were sold for $3.25 to $3.50 per tree and the partnership had an inventory at the time relevant of between 90,000 and 130,000 trees. The Debtor conducted the day-to-day operation of the nurs-

ery. Lane, who is related to the Debtor through marriage, resided in North Carolina, and was a silent partner only and did not participate in the day-to-day operations of the partnership.

A serious disagreement developed between the partners and, as a result, Lane filed a suit against the Debtor in the Tenth Judicial Circuit in and for Polk County, Florida, Case No. GC–G–92–599. In his Amended Complaint, Lane alleged, inter alia, that the Debtor was guilty of fraud, civil theft, and breach of contract. Lane additionally alleged breach of trust and sought imposition of a constructive trust on one-half of all proceeds from sales and on the assets of the nursery, which, at that time, was operated under the name Ridge Trust Nursery. (Plaintiff's Exh. 1)

The suit was settled before trial. As part of the settlement, the Debtor executed a Promissory Note in the principal amount of $35,000 payable to Lane due and payable on or before May 11, 1990. (Plaintiff's Exh. 2) In addition, the Debtor executed a Security Agreement in favor of Lane to secure the obligation represented by the Note. The Security Agreement granted Lane a security interest in approximately 90,000 budded citrus trees then in existence and growing on land located in Polk County, "more particularly described on Exhibit "A" attached to the Security Agreement". However, there was no Exhibit A attached to the Security Agreement. (Plaintiff's Exh. 6)

The Debtor also executed a UCC–1 Financing Statement which included the same identical description of the collateral as above, and again referred to Exhibit A. It appears, however, that the UCC–1 Financing Statement was never recorded and no Exhibit A was attached to same. Moreover, no legal description of the land on which the trees were planted was ever furnished to counsel representing Lane. (Plaintiff's Exh. 6)

There is no dispute that it was the understanding of the parties, although this understanding was not documented, that the source of repayment of the Promissory Note to Lane was to be from the sale of the trees, of which Lane was to receive $1 from each

tree sold. In compliance with this understanding, the Debtor did in fact make two payments, one in the amount of $1,500 and a second in the amount of $1,730. (Plaintiff's Exh. 7)

After the May agreement, pursuant to which Lane ceased to be a partner, the Debtor commenced negotiations with Maurice Paul Raulerson (Raulerson), principal of Paul's Citrus Nursery, Inc. The negotiations culminated in the execution of an Agreement to Sell dated October 7, 1988. (Plaintiff's Exh. 10) Under this Agreement, the Debtor and his wife agreed to sell the nursery business, then operating as Ridge Citrus Nursery, to Paul's Citrus for $70,000. This sum was to be paid in the following manner: $35,000 to Lane in satisfaction of the note executed by the Debtor as part of his earlier settlement with Lane; $11,200 to pay the debts of the Debtor related to the operation of the citrus nursery; and $23,800 to the Debtor, payable $1 per tree sold. As part of this Agreement, Raulerson signed a Promissory Note as president of Paul's Citrus in the amount of $23,800 payable to the Debtor. A Bill of Sale was also executed on the same date conveying "the going business known as RIDGE CITRUS NURSERY together with irrigation system, nursery equipment, supplies, lease, tree inventory and list of customers shown as Schedule "A" attached hereto and made a part hereof." It is important to note that this conveyance was subject to, and expressly recognized, the security interest granted by the Debtor to Lane, and that the obligation which this interest was to secure was assumed by Paul's Citrus.

It is without dispute that counsel for Lane was advised by counsel for the Debtor, by letter dated September 19, 1988, that the Debtor negotiated to sell the nursery to Paul Robertson (sic) who had already been providing working capital in order to keep the nursery going. This letter also informed counsel for Lane that whatever will be accomplished will be subject to Lane's security interest. (Plaintiff's Exh. 7)

Approximately three weeks after the execution of the Agreement with Paul's Citrus, the State of Florida (State) placed an abso-

lute one-year quarantine on the nursery because of the threat of canker. As a result, Raulerson was prohibited to sell or move any of the trees, the nursery ceased all operations and, of course, produced no funds. By February 1989, Raulerson abandoned the nursery, even though the quarantine was ultimately lifted. It is unclear from this record what disposition was made of the citrus trees, although it is reasonable to infer that they were destroyed by the State either by burning or by plowing. In this connection, it should be noted that the land on which the trees were to be grown was leased and not owned by the Debtor.

It is without dispute that Raulerson did not pay anything to anybody after he took over the nursery, and as a result, Lane was not paid on his $35,000 Promissory Note (other than the two initial payments made by the Debtor). Nor did the Debtor receive any monies from Raulerson. Raulerson made no payments, despite the fact that Raulerson received $300,000 from the State as compensation for the loss of the nursery due to the quarantine. This last fact was unknown and not revealed until Raulerson admitted it, to everyone's surprise, during his testimony at the trial. But even after receiving the $300,000, Raulerson did not pay anyone who was to receive monies pursuant to the Agreement to Sell as executed by Raulerson (on behalf of Paul's Citrus) and the Debtor. Neither the Debtor, nor Lane, nor the other creditors of the nursery were paid by Raulerson.

Not having received any payments, on December 17, 1992, Lane sued the Debtor on the Note in the Tenth Judicial Circuit in and for Polk County, Florida. (Plaintiff's Exh. 13) The Debtor filed an answer to the Complaint in propria persona on March 4, 1992. The Debtor filed his Petition for Relief under Chapter 7 on November 20, 1992, which, of course, stopped any further proceeding in that suit by virtue of the automatic stay imposed by § 362(a) of the Bankruptcy Code.

On these relevant facts, Lane contends that he is entitled to a judgment declaring the debt owed to him by the Debtor, as represented by the promissory note, should be excepted from the overall protection of the general bankruptcy discharge based on

§ 523(a)(6). The Complaint which seeks this determination of nondischargeability, filed on July 6, 1993, alleges, inter alia, that the Debtor, in violation of the Security Agreement and without permission and consent of Lane, did sell the "security" (sic), i.e. collateral, and that the Debtor intentionally "failed" to record the security interest (sic), all of which amount to a willful and malicious intent to defraud and to evade the Debtor's liability or to injure the Plaintiff. The Complaint also contains some totally irrelevant allegations, e.g. that through lack of "due diligence" the Debtor intentionally mischaracterized in his Schedules the debt owed by the Debtor to Lane.

As noted earlier, the claim under consideration is based on Section 523(a)(6) which provides in relevant part that:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

The standard of proof required to prevail on a claim of nondischargeability is only a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To prevail under § 523(a)(6), a plaintiff must prove that the debtor committed a willful and malicious act which caused injury to the property of an entity or to an entity. "Willful" has been defined as "deliberate and intentional," *In re Scotella*, 18 B.R. 975, 977 (Bankr.N.D.Ill. 1982); *In re Keene*, 135 B.R. 162, 167 (Bankr. S.D.Fla.1991), and not done through oversight or negligence. For the act to be "malicious", the debtor must be aware of and know that his conduct would cause injury to another or to the property of another, and must be the result of a willful act done wrongfully and without just cause or excuse. *See In re Greer*, 21 B.R. 763 (Bankr.D.Ariz. 1982).

Concerning the totality of the evidence, this Court is satisfied that the proof required to prevail on the claim as presented

at the trial is woefully inadequate and is tantamount to nothing more than the failure of the Debtor to pay a particular obligation, which is a common feature of all cases filed under Title 11. There is nothing in this record to show that this Debtor ever intended to willfully and maliciously dispose of the "so-called" collateral described in the Security Agreement and UCC-1. (Plaintiff's Exhs. 3 and 4, respectively) On the contrary, the Agreement by the Debtor to sell the nursery to Raulerson or Paul's Citrus expressly recognized Lane's security interest in the inventory and specifically provided that $1 shall be earmarked from each sale to be paid to Lane until the obligation of the Debtor represented by the Promissory Note is fully satisfied. Thus, there is no question that the Debtor always intended to live up to his obligation to pay Lane, and he was only prevented from doing so because he himself did not receive the payment of the purchase price by Raulerson. As noted earlier, while he had control of the operation of the nursery, the Debtor did make two payments to Lane. This fact would clearly belie the contention that he intended with malice to deprive Lane of his collateral and evade his obligation to repay the $35,000.00 he promised to pay as part of the settlement.

In sum, this Court is satisfied that the proof present is totally insufficient to support the claim and therefore it is appropriate to enter a judgment in favor of the Debtor and against Lane and to dismiss the Complaint with prejudice.

A separate final judgment shall be entered in accordance with the foregoing.