In re Earl Dean CUMMINS, Debtor.

**FIRST NATIONAL EXCHANGE BANK, Plaintiff,**

v.

**Earl Dean CUMMINS, Defendant.**

**Bankruptcy No. 3-81-00147.
Adv.No. 3-81-0139.**

United States Bankruptcy Court,
E. D. Tennessee.

May 7, 1981.

Joe D. Pippin, Norton, Va., for plaintiff.

H. G. Peters, Bristol, Va., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This adversary proceeding relates to the dischargeability of a $5,000.00 debt arising from a deposit erroneously credited to a bank account controlled by the debtor and subsequently withdrawn by him.

### I

In 1979, the debtor, Earl Dean Cummins, was the sole stockholder of Ashley Enterprises, Inc., which owned and operated the Big Stone Gap Kentucky Fried Chicken restaurant in Big Stone Gap, Wise County, Virginia. The corporation maintained a bank account with plaintiff, First National Exchange Bank, under the name Ashley Enterprises, Inc. dba Kentucky Fried Chicken. In late February, 1979, the restaurant was transferred to the Osborne family of Big Stone Gap, Virginia, which set up a new corporation, Big Stone Gap Kentucky Fried Chicken, Inc., and began operating the restaurant under that name.

From February 1979 until he filed his petition in bankruptcy, the debtor owned no interest in any restaurant or other business in Wise County, Virginia.

On April 17, 1979, the Norton Kentucky Fried Chicken (also owned by the Osborne family) issued its check number 100 payable to Big Stone Gap KFC, Inc., in the amount of $5,000.00. Although the check was properly endorsed "for deposit only Big Stone Gap KFC, Inc.", it was credited erroneously by a Bank employee to the account of Ashley Enterprises, Inc. The Ashley Enterprises' account had been dormant since the sale of the restaurant and, prior to the erroneous deposit, had a balance of only $198.02. Apparently, the Bank mailed statements at the end of April and May, 1979; however, there was no activity in the account during those months other than the erroneous deposit.

On June 19, 1979, the debtor issued a check payable to Bank of Virginia for $5,100.00 which was deposited to his account. Thereafter, he disposed of those funds. The erroneous deposit was not discovered by the First National Exchange Bank until April 1980, when Big Stone Gap Kentucky Fried Chicken, Inc. advised the Bank that the $5,000.00 deposit of April 17, 1979, had not been credited to its account. Subsequent investigation revealed the erroneous deposit and a bank official, Sherrie Lester, contacted the debtor and requested him to repay this sum to the Bank. He did not do so. On the date of bankruptcy, $21.97 was on deposit in the account.

The debtor admits he withdrew the funds. He says, however, that he was not aware that the money did not belong to him, that he never had a clear idea of the amount of funds in the account, and that restaurant managers would sometimes make deposits to the account. The fallacy of this contention, however, is that, after the restaurant sale in February 1979, the debtor had no business operations in Wise County; hence, no one would have been making deposits to his account. Other reasons advanced by the debtor for withdrawing the funds were that the Osbornes still owed him some money and that he was involved in a divorce proceeding. The debtor's reasons seeking to justify withdrawal of the funds simply do not stand up under

close scrutiny. He made no attempt whatsoever to identify a $5,000.00 deposit to his account knowing full well that he had not made the deposit. When he withdrew those funds from the account and converted those funds to his own use, he placed himself squarely within the prohibition of Sec. 523(a).

Sec. 523(a) of the Bankruptcy Reform Act states that a discharge in bankruptcy under Sec. 727 does not discharge an individual debtor from any debt for obtaining money by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). Further, a discharge does not discharge any debt for willful and malicious injury to the property of another. 11 U.S.C. § 523(a)(6).

Sec. 17(a)(2) of the prior Bankruptcy Act excepted debts arising from "willful and malicious conversion of the property of another." The deletion of that phrase from the present Code is explained in the House Report as follows:

"The deletion of willful and malicious conversion from Sec. 17a(2) of the Bankruptcy Act is not intended to effect a substantive change. The intent is to include in the category of non-dischargeable debts a conversion under which the debtor willfully and maliciously intends to borrow property for a short period of time with no intent to inflict injury but on which injury is in fact inflicted." H.R. Rep.No.95–595, 95th Cong. 2d Sess. 364, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320.

The phrase "willful and malicious injury" covers a willful and malicious conversion. Statement of Senator DeConcini, October 6, 1978, 124 Congressional Record S17406.

"Conversion" is any unauthorized act which deprives an owner of his property permanently or for an indefinite time. Black's Law Dictionary, 4th Ed.

"To deprive another of his property forever by deliberately disposing of it without semblance of authority is certainly an injury thereto within common accepta-

tion of the words." *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916).

When the debtor withdrew the $5,000.00 erroneously deposited to his account, he knew those funds did not belong to him. By intentionally disposing of those funds, he forever deprived the Bank of its property. It is true that a claim founded upon a mere technical conversion, without conscious intent to violate the rights of another, and under mistake or apprehension, is dischargeable, 1A *Collier on Bankruptcy*, § 17.09 (14th Ed.), *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393, but that is not the case here. The debtor knew he had not made the deposit, knew the funds did not belong to him, and made no attempt to determine the rightful owner. A simple inquiry at the Bank would have disclosed that person. Instead, the debtor withdrew the funds and used them as his own. He cannot under the Bankruptcy Code escape the consequences of his act. The debt is non-dischargeable.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.