In re Bernard Michael ALDRICH, Linda Aldrich, Debtors.

PEOPLES SECURITY FINANCE, INC., Plaintiff,

v.

Bernard Michael ALDRICH, Linda Aldrich, Defendants.

Bankruptcy No. 4-80-00408.
Adv. No. 4-81-0017.

United States Bankruptcy Court,
W. D. Kentucky.

Jan. 27, 1982.

Henry M. Griffin, III, Owensboro, Ky., for defendants-debtors.

W. Gordon Iler, Owensboro, Ky., for plaintiff.

## MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This bankruptcy case comes before the Court on complaint of Peoples Security Finance, Inc. (Peoples), a creditor, by counsel, seeking a determination that its debt be found nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (6). The facts pertinent to the issues raised here can be briefly recited:

On November 19, 1979, Peoples and the debtor entered into a loan agreement in the total amount of One Thousand Two Hundred Sixty-Two and 82/100 Dollars ($1,262.82). In conjunction with this loan transaction, Peoples took and properly perfected a security interest in a "26′ Owens Cabin Cruiser 307 Interceptor engine". Thereafter, on May 12, 1980, debtors attempted to borrow additional funds from Peoples.

The debtors met with Richard Marcellino (Marcellino), Peoples' manager, at which time Marcellino was advised that the boat which was given as security for the November, 1979, loan had been sold by the debtors for Seven Hundred Dollars ($700.00). The debtors were advised by Marcellino that Peoples would have to have security in order to have their loan approved.

The debtors were undecided as to whether to pledge a freezer or a 1979 Ford Mustang automobile, and advised Marcellino they would advise him of their decision at a later time.

Subsequently, on May 28, 1980, the debtors returned to Peoples, and in Marcellino's absence obtained approval of their loan application. The total note agreement required the debtors to repay Peoples in the total aggregate amount of Two Thousand Two Hundred Ninety-Four and 62/100 Dollars ($2,294.62). At the time of this second transaction, debtors were indebted to Peoples in the amount of Seven Hundred Twenty-Eight and No/100 Dollars ($728.00), which was satisfied from the proceeds of the second loan. They also received Six Hundred Seventy-Five and 57/100 Dollars ($675.57) in cash, and granted Peoples a second mortgage on the 1979 Ford Mustang automobile. The security agreement was properly perfected by recording in the County Court Clerk's Office.

The negotiations and intentions of the parties are best evidenced by the following testimony of Linda Aldrich:

"Mr. Marcellino said no, that was not adequate (the freezer) but he would consider it if I put the car up and, as a matter of fact, it was more than just considered. He said he would give us the money if the car was put up. I did not want to put the car up but after a couple of weeks, my husband more or less talked me into putting the car up. So we went back in and the paper work was all drawn up except possibly typing up the check and the security ... everything else was approved and ready." Transcript of Trial, pp. 34–35.

The Court has jurisdiction of the parties and the subject matter of this bankruptcy case pursuant to 28 U.S.C. § 1471. The established law relating to dischargeability of debts under the Bankruptcy Act of 1898, § 17(a)(2), 11 U.S.C. § 35(a)(2), generally continues to be applicable to cases under 11 U.S.C. § 523(a)(2). See H.Rep.No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

The exceptions set forth in § 17(a)(2) of the Bankruptcy Act [now § 523(a)(2) of the Bankruptcy Code and in essence works no change upon the former law] are to be strictly and literally construed so as to discharge all debts except those specifically within the exceptions; that "actual fraud" must be established by clear, cogent and convincing evidence. *Davison-Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir. 1940); *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 387, 59 L.Ed. 717 (1915); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967).

Section 523(a)(2)(B) provides that a discharge under Section 727, 1141 or 1328(b) does not discharge an individual debtor from any debt—

"(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive...." 11 U.S.C. § 523(a)(2)(B).

The burden of proof is upon the plaintiff to prove each element as provided under Rule 407, Rules of Bankruptcy Procedure, which states:

"At a trial on a complaint objecting to a discharge, the plaintiff has the burden of providing the facts essential to his objection."

Each of the elements of section 523(a) must be proved. Thus, a creditor must prove that the debt was obtained by the use of a statement in writing (1) that is materially false; (2) respecting the debtor's financial condition; (3) on which the creditor reasonably relied in extending money, property, services or credit; (4) that the debtor caused to be made or published with intent to deceive. 3 *Collier on Bankruptcy*, ¶ 523.09 (15th Ed. 1979).

The burden of proof in dischargeability cases involving false financial statements is a federal question governed by federal law. *In Re Barlick*, 1 BCD 412 (D.R.I.1974).

That to come within the exception of Section 523(a)(2)(B), the statement must either have been written by the debtor, signed by the debtor, or the particular writing must have been adopted and used by the debtor. See 3 *Collier on Bankruptcy*, ¶ 523.09[1] (15th Ed. 1979), citing *In Re Gonzalez*, 287 F.Supp. 281 (S.D.N.Y.1968).

Whether or not a statement is material depends mainly upon whether the complainant relied upon it partially or entirely. Reliance must have been a contributing cause for extension of such credit. *In Re Ellis*, 1 BCD 798 (S.D.N.Y.1975). Partial reliance on the financial statement may suffice. However, the financial statement must be shown to have had such weight in the consideration of the lender that the loan would not have been granted had the lender not relied upon the borrower's representations. *In Re Fetherston*, 1 BCD 1485 (W.D. Wis.1975).

It is not sufficient to show that the statement is incorrect in fact. It must be materially false. The omission, concealment or understatement of liabilities constitutes a materially false statement. See generally 3 *Collier on Bankruptcy*, ¶ 523.-09[2] (15th Ed. 1979), citing numerous cases.

That debtor's assertion of honest motives and innocent intent, uncorroborated by additional evidence, will not rebut the natural inferences from the admitted facts. *In Re Berk*, 356 F.Supp. 453 (E.D.N.Y.1973).

To accept statements of honest motives and innocent intent without additional evidence, clear and convincing in character, would result in affording an easy method of frustrating the purpose of the law. *In Re Monsch*, 18 F.Supp. 913 (E.D.Ky.1937). The Court is not bound to accept self-serving testimony. *In Re Bebar*, 315 F.Supp. 841 (E.D.N.Y.1970).

Here, the evidence revealed and is uncontroverted that Peoples knew when it approved the loan in May, 1980, that the collateral for the November, 1979, loan was no longer in the debtor's possession. Peoples has failed to meet their burden of proof by establishing by the preponderance of the evidence that the financial statement given to Peoples was materially false.

In the alternative, Peoples has pleaded in their complaint that the debtor's disposition of the boat is excepted from discharge within the meaning of § 523(a)(6).

The phrase "willful and malicious injury" as used in § 523(a)(6) is intended to include a willful and malicious conversion of property of another. *In Re Hodges*, 4 B.R. 513 (Bkrtcy.W.D.Va.1980); *In Re McCloud*, 7 B.R. 819 (Bkrtcy.M.D.Tenn.1980); *In Re Cummins*, 11 B.R. 222 (Bkrtcy.E.D.Tenn. 1981); and H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 365 (1977); U.S.Code Cong. & Adm.News, pp. 5787, 6320 (1979).

In order for the debt to come within the exception provided by § 523(a)(6), a creditor must show that the debtor's conduct was malicious as well as willful. *In Re Hawkins*, 6 B.R. 97 (Bkrtcy.W.D.Ky.1980).

The decision of *In Re Cummins*, 11 B.R. 222 (Bkrtcy.E.D.Tenn.1981) defined "conversion" to be "... any unauthorized act which deprives an owner of his property permanently or for an indefinite time." Citing *Black's Law Dictionary*, 4th Ed.

The Court further elaborated by defining the act of conversion. "To deprive another of his property forever by deliberately disposing of it without semblance of authority is certainly an injury thereto within common acceptation of the words." Citing *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916).

The term "willful" has been found to mean deliberate and intentional, and a mere technical conversion is not within the meaning of subsection (a)(6). *In Re McCloud*, 7 B.R. 819 (Bkrtcy.M.D.Tenn.1980) and *In Re Cummins, ibid.; Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1935).

Section 523(a)(6) reads in the conjunctive, not the disjunctive, requiring the plaintiff to establish that not only was the act done "willfully", but that it was done maliciously. "Malicious" has been found to mean an "intent to do harm". *In Re Hodges*, 4 B.R. 513 (Bkrtcy.W.D.Va.1980).

█ It is well settled that the time of the conversion is the time to be applied in determining the value of the property in an action for conversion. *In Re Auvenshine*, 9 B.R. 772 (Bkrtcy.W.D.Mich.1981), citing 18 Am.Jur.2d, *Conversion*, § 86 (1965).

█ The debtor's conduct in disposing of plaintiff's collateral although "willful" was not malicious as defined by the cases interpreting this subsection. In fact, plaintiff was advised in May, 1980, that their security had been sold but chose not to take any action until they filed their complaint with this Court in April of 1981. Again, plaintiff has failed to establish the requisite intent. *In Re Hawkins*, 6 B.R. 97 (Bkrtcy.W.D.Ky. 1980).

Finally, it is the conclusion of this Court that the parties intended to substitute the automobile for the boat when they entered into the May, 1980, loan contract.

KRS 355.9–204(5) provides:

"(5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment."

"In Kentucky, the rule is that a renewal note does not extinguish the original obligation unless there is a novation." *Cantrill Construction Company v. Carter*, 418 F.2d 705, 707 (6th Cir. 1969), citing *Porter v. Bedell*, 273 Ky. 296, 298, 116 S.W.2d 641 (1938).

A "novation is the substitution of a new obligation for an old one, with the intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him." *Truscon Steel Co. v. Thirwell Elec. Co.*, 265 Ky. 414, 417, 96 S.W.2d 1023, 1025 (1936).

It has been found that intent is the essential element in proving a novation. *Cantrill Construction Company v. Carter, supra,* at 707.

█ It is the conclusion of the Court that the transaction between Peoples and the debtors was a renewal of an existing loan in connection with an extension of new credit, and that the "flipping" of the loan was for the convenience of the lender so that it could comply with the Small Loan Act. See *In Re Ellis*, 1 BCD 798 (S.D.N.Y. 1975).

For the foregoing reasons, the Court finds that the debt owed to Peoples by the debtors is dischargeable.

WHEREFORE, IT IS ORDERED AND ADJUDGED that plaintiff's complaint be and is dismissed.