**In re Harry LICHT, Debtor.**

**Vincent GARGIULO and Peter Argento, Plaintiffs,**

v.

**Harry LICHT, Defendant.**

**Bankruptcy No. 82–01111–BKC–SMW. Adv. No. 82–0839–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

March 22, 1983.

Paul E. Gifford, Miami, Fla., for plaintiffs.

Jerald I. Rosen, Hialeah Gardens, Fla., for defendant/debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come before the Court upon an Amended Complaint to determine the dischargeability of a debt; and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the sole witness; considered the arguments of counsel; and being otherwise fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

Plaintiffs are two individuals, holders of a judgment ("the State Judgment") entered against Defendant, the herein Debtor, obtained in the State of New York in the Supreme Court for Queens County ("the State Court") on March 18, 1981. That Judgment was in turn based on an Amended Final Judgment ("the Federal Judgment") of the United States District Court for the Eastern District of New York ("the Federal Court"), dated May 21, 1976 entered against this Defendant, who was Plaintiff in that action, concerning the same transaction at issue in the State Court. The State Judgment was domesticated by Plaintiffs in the Southern District of Florida by Final Judgment entered August 2, 1982.

The State Judgment and the Federal Judgment are both part of the record before this Court. Both the State Court and the Federal Court entered lengthy findings of fact and conclusions of law which chronicle in abundant detail the transactions between the instant parties and which also portray in detail the ancillary role played by several other parties not now before this Court. Most of those facts, although interesting, are happily of no materiality here, for the State Court and the Federal Court after trying these matters on the merits have already determined certain ultimate facts relevant to the issue of dischargeability, the only issue now before this Court. From the decisions of those courts and the testimony of Defendant, those ultimate facts, plus a modicum of background detail and procedural history necessary to render intelligible the issues of fact and law presented here, can be summarized as follows:

When two corporations, organized in the State of New York to construct and own day-care centers, fell into financial difficul-

ty, Defendant, at the request of the general contractor on the projects, advanced $112,-000.00, ostensibly in consideration for one third of the capital stock of both corporations. Thereafter the construction projects undertaken by the two corporations apparently experienced further difficulties, which culminated in an Agreement dated June 20, 1973, ("the Agreement") among the two corporations; the two Plaintiffs in this action, who had obtained the land on which the day-care centers were being constructed; and a third party later determined by the Federal Court to be the agent or alter ego of Defendant. The Agreement provided, *inter alia,* that the shares in the two corporations purchased by Defendant would be transferred to the two corporations; that the two corporations would pay Defendant $112,000.00, the same sum Defendant had earlier advanced; and that Plaintiffs would secure the promise of the two corporations to pay the $112,000.00 with a pledge of shares ("the Pledged Shares") in a third corporation owned by Plaintiffs, which shares appear to have had a value substantially in excess of that sum.

Thereafter, Defendant made demand on Plaintiffs for the $112,000.00 and threatened to sell the Pledged Shares if payment was not immediately forthcoming. Plaintiffs responded by filing a suit in the State Court which sought to invalidate the Agreement on various grounds, including fraud and duress, and which sought to enjoin the sale of the Pledged Shares. Defendant responded by filing a suit of his own against Plaintiffs in the Federal Court which sought enforcement of the Agreement. While both actions were pending, all parties to the Agreement entered into a Stipulation dated December 4, 1974, ("the Stipulation"), which they then filed in the State Court action. Under the terms of the Stipulation, Plaintiffs, *inter alia,* paid Defendant $112,-000.00 and Defendant's counsel delivered the Pledged Shares to Plaintiffs. The Stipulation contained an express disclaimer, however, that neither the execution nor performance of the Stipulation would oper-

ate to settle, discontinue or abate any pending or future litigation between the parties.

The Federal Court ruled first, dismissing the claims of Defendant (there Plaintiff) with prejudice, basing its decision on findings that, *inter alia,* these Plaintiffs' execution of the Agreement had been obtained by fraud and economic duress on the part of Defendant's agent; that there was a failure of consideration by Defendant to support the Agreement; that the Agreement was void in that it was illegal and violated public policy; and that, notwithstanding that this Defendant was not a signatory to the Agreement, he was nevertheless a third party beneficiary, subject to all the equities and bound by the illegality. Defendant's appeal from the Federal Judgment was dismissed by the United States Court of Appeals for the Second Circuit on December 2, 1976.

Upon dismissal of that appeal, Plaintiffs demanded that Defendant return the $112,-000.00 they had paid him pursuant to the Agreement and the Stipulation. When Defendant refused to refund those monies, Plaintiffs Amended their Complaint in the State Court to add a cause of action for restitution of the $112,000.00 based on unjust enrichment and dropped all other causes of action asserted in their original Complaint. Accepting the Findings of Fact and Conclusions of Law entered by the Federal Court as *res judicata,* the State Court entered a lengthy Memorandum Decision which awarded judgment to Plaintiffs. The Memorandum Decision discusses in detail the findings of the Federal Court concerning fraud, duress, and illegality; but, in conformity with Plaintiffs' Amended Complaint, the State Judgment is bottomed on theories of unjust enrichment and restitution.

In this Court, Plaintiffs' Amended Complaint seeks to have the debt evidenced by the State Judgment, as domesticated in this District, excepted from Defendant's discharge based on fraud [11 U.S.C. § 523(a)(2)(A) ], or, in the alternative, based

on willful and malicious injury to Plaintiffs' property [11 U.S.C. § 523(a)(6)]. Plaintiffs have argued strenuously that a clear finding of fraud is the basis for the Judgment debt and, indeed, there is much in the Memorandum Decision of the State Court, to support that view. Nevertheless, we need not reach the thorny issue of actual fraud to dispose of the issue of dischargeability here presented. It is beyond peradventure of doubt that the State Judgment is based squarely on the determination of the Federal Court that the Agreement, pursuant to which Plaintiffs paid $112,000.00 to Defendant, was void, illegal and unsupported by consideration on the part of Defendant. The State Court thus ordered restitution to prevent unjust enrichment. This being so, the monies paid by Plaintiffs to Defendant were at all times the property of Plaintiffs and never became the property of Defendant.

■ This Court is not as a matter of law limited to consideration of the record in and Judgment of the State Court when determining matters of dischargeability. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Accordingly, at trial this Court allowed each party to present such proper and admissible evidence as it saw fit to aid this Court in reaching a just result. But having considered the detailed and lucid Memorandum Decision entered by the State Court and the extensive Findings and Conclusions entered by the Federal Court, and further taking into account the testimony offered by the Defendant at trial of this cause, this Court must conclude that the Defendant has had his day in Court on the issues upon which the Judgment debt is based and that the Memorandum Decision entered by the State Court is sufficiently reliable to serve as a basis for a determination of dischargeability by this Court.

■ As the funds paid to Defendant were at all times the property of Plaintiffs, and not the property of Defendant, Defendant's refusal to make restitution for those funds to Plaintiffs constitutes an act of conversion of Plaintiffs' property. *See In re Cummins*, 11 B.R. 222 (Bkrtcy.E.D.Tenn. 1981). To render a debt nondischargeable, however, such conversion must be "willful and malicious" rather than merely technical. *In re Grace* 22 B.R. 653 (Bkrtcy.E.D. Wis.1982); *In re Donny*, 19 B.R. 354 (Bkrtcy.W.D.Wis.1982); *In re Langer*, 12 B.R. 957 (D.N.D.1981); *In re Cummins, supra*. On the facts presented, the Court finds that Defendant's retention of Plaintiffs' funds after Judgment had been rendered in the Federal Court was intentional and deliberate and thus "willful" within the meaning of § 523(a)(6) of the Bankruptcy Code. *In re Grace, supra; In re Aldrich*, 16 B.R. 825 (Bkrtcy.W.D.Ky.1982); *In re Langer, supra; In re McCloud*, 7 B.R. 819 (Bkrtcy.M.D.Tenn.1980). Defendant's retention of Plaintiffs' funds was also "malicious" within the meaning of § 523(a)(6) in that it arose out of a wrongful act done without just cause or excuse, [*In re Dardar*, 620 F.2d 39 (5th Cir.1980); *Vickers v. Home Indemnity Co.*, 546 F.2d 1149 (5th Cir.1977); *In re Greer*, 21 B.R. 763, 766 (Bkrtcy.D.Ariz. 1982); *In re Norton*, 21 B.R. 725 (Bkrtcy.W. D.Mo.1982); *In re Haynes*, 19 B.R. 849 (Bkrtcy.E.D.Mich.1982); *In re Roelleke*, 18 B.R. 53 (Bkrtcy.C.D.Ill.1980); *In re Fussell*, 15 B.R. 1016 (D.W.D.Va.1981); *In re Obermeyer*, 12 B.R. 26 (Bkrtcy.N.D.Ohio 1981); *In re Friedenberg* 12 B.R. 901 (Bkrtcy.S.D. N.Y.1981)]; or with intentional disregard for the rights of another. *In re Langer, supra*. It is not necessary that Plaintiffs show that Defendant acted out of hatred, spite, ill will, or special malice. *In re Greer, supra; In re Norton, supra; In re Fussell, supra; In re Obermeyer, supra; In re Friedenberg, supra*.

Since the advent of the Bankruptcy Code, other Courts, faced with an intentional and unjustified act of conversion have reached a similar result. As one Bankruptcy Court has noted in a recent decision:

> No provision of the law of bankruptcy entitles the debtor, or his trustee in bank-

ruptcy, to withhold specific property owned by another from the true owner under a claim that the liability represented thereby is a dischargeable liability. .... [T]he debt created by withholding of specific property in the face of a demand for the production of it or its proceeds would have to be regarded as nondischargeable as "willful and malicious injury to property" within the meaning of § 523(a)(6) of the Bankruptcy Code. *In re Underwood,* 17 B.R. 417, 419 ( [D.]W.D.Mo.1981); *see also In re Grace, supra; In re Fry,* 14 B.R. 864 ([Bkrtcy.]D.Ariz.1981); *In re Cummins, supra; In re McCloud, supra.*

This Court, having found and concluded that the Defendant has deliberately and without legal justification converted the property of Plaintiffs and has thereby inflicted a willful and malicious injury upon the property of the Plaintiffs, further finds and concludes that the State Court Judgment, which, including costs and accrued interest now totals $170,233.37, is in accordance with 11 U.S.C. § 523(a)(6) excepted from such discharge as the Defendant may obtain in these Chapter 7 proceedings. A separate Final Judgment of even date has been entered in conformity herewith.