In re George Edmund VALENTINE and Barbara Ann Valentine, Debtors.

DORAN SERVICES, INC., d/b/a Servicemaster South/North, Plaintiff,

v.

George Edmund VALENTINE, Defendant.

Bankruptcy No. IP86–7186 V. Adv. No. 87–133.

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

July 13, 1988.

John R. Helm, Hyatt Legal Services, Indianapolis, Ind., for debtor/defendant.

Richard A. Clem, Alden & Clem, Indianapolis, Ind., for plaintiff.

Kevin B. McCarthy, Indianapolis, Ind., U.S. trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RICHARD W. VANDIVIER, Bankruptcy Judge.

This matter comes before the Court on the Complaint for Determination of Nondis-

chargeability of Debt file by Doran Services, Inc., d/b/a Servicemaster North/South ("Servicemaster") on April 20, 1987. Trial was held April 5, 1988. The Court now makes its findings of fact and conclusions of law.

## Findings of Fact

1. In early 1985, the residence of George Edmund Valentine ("the Debtor") and his wife sustained fire damage. Servicemaster was in the business of cleaning and repairing property damaged by fire. After the Valentines' insurance adjuster advised Servicemaster of the Valentines' fire loss, Servicemaster contacted the Valentines. In April 1985 the Debtor hired Servicemaster to clean and repair the residence. Mike Doran ("Doran"), president and, with his wife, sole shareholder of Servicemaster, submitted an initial estimate of $2917.01 to the insurance adjuster on April 19, 1985, and a final bill of $3423.84 to the Debtor on May 10, 1985. The insurance company sent a check dated May 6, 1985 for $2908.59 to the Valentines, payable to the Valentines and Servicemaster. On or about May 9, 1985, the Debtor signed Servicemaster's name on the check and deposited it into his account. The Debtor made a $1000.00 payment to Servicemaster in October 1985 and a $200.00 payment in March 1986. The balance remained unpaid when the Debtor filed for relief under Chapter 7 of the Bankruptcy Code on December 3, 1986.

2. Servicemaster filed its complaint initiating this adversary proceeding on April 20, 1987. The complaint alleges an outstanding balance of $2223.84, contends that under Indiana law Servicemaster is entitled to treble damages and attorney fees, and asks for a determination that a debt of $6671.52 plus attorney fees be declared nondischargeable under 11 U.S.C. section 523. At trial, Servicemaster stated that it sought only a determination of nondischargeability so it can pursue its state law remedies in state court.

3. There were two witnesses at trial, the Debtor and Doran. Doran testified to his customary practice of requiring that insurance checks be made jointly to the insureds and to Servicemaster, and of informing the insureds that they were to sign and turn over the insurance check after they were satisfied with the work done. He believed he followed this practice with the Debtor and testified that he would not have agreed to do the job if the check were not to be issued with Servicemaster as joint payee. The Debtor does not recall being informed that the check would include Servicemaster as payee or telling Servicemaster that it would be paid from the insurance proceeds, and he denies agreeing to turn the check over to Servicemaster. The Court finds Doran's recollection to be the more credible and finds that the Debtor agreed and understood, at very least, that Servicemaster was entitled to the proceeds of the insurance check in prompt payment for its services.

4. The Debtor testified that he attempted to deposit the insurance check with only his and his wife's signature, but the teller told him that he would have to sign Servicemaster's name also, then wait ten days to see if the check would clear that way. He signed "Servicemaster" on the check in front of the teller and deposited it into his account. Although the Debtor claims he was just relying on the teller's instructions in signing Servicemaster's name and depositing the check, the Court finds that at the time he deposited the check, he knew that Servicemaster had the right to the insurance proceeds and that the teller had no authority to compromise that right. By depositing the check into his account rather than forwarding the check to Servicemaster and by neglecting to promptly pay Servicemaster from the proceeds then in his account, the Debtor acted in knowing disregard of Servicemaster's rights.

5. Doran testified that he contacted the Debtor about payment several times between May and October 1985, and the Debtor told him that he had not yet received the insurance check. Doran eventually contacted the insurance adjuster and discovered that the check had been issued and cashed. He and the adjuster then confronted the Debtor with this information in October 1985, at which time the Debtor

admitted having received the check and used the money. He made a $1000.00 payment and agreed to start making payments on the balance. The Debtor testified that he did not deny receiving the check after he had deposited it, but admits that he used the check proceeds for other purposes, that he did not contact Servicemaster after he had received the check and that he did not make any payment until Servicemaster contacted him in October 1985. The Court finds Doran's version of these events to be the more credible. The fact that the Debtor denied having received the insurance check until confronted with evidence that he had received and deposited it evidences the Debtor's knowledge that Servicemaster had the right to the proceeds.

6. There is no evidence that the Debtor did not intend to pay Servicemaster at the time he entered into his agreement with Servicemaster. The Court cannot find that the Debtor intended never to pay Servicemaster or that the Debtor harbored any ill-will toward Servicemaster. The Debtor may well have hoped that he would eventually replenish his bank account so he could pay Servicemaster. However, the Court finds that at the time he signed Servicemaster's name to the insurance check, deposited it into his account and used the proceeds for purposes other than paying Servicemaster, the Debtor knew that Servicemaster had the right to prompt payment from the insurance proceeds and that the Debtor used those proceeds for other purposes in knowing disregard for Servicemaster's rights.

### Conclusions of Law

1. This Court has jurisdiction over this matter. 28 U.S.C. section 157(b)(2)(I).

2. A Chapter 7 discharge does not discharge a debtor from debts incurred through actual fraud, embezzlement, or willful and malicious injury. 11 U.S.C. section 523(a)(2), (4), and (6). Although the complaint does not cite the theory on which the plaintiff is proceeding, these are the only ones which arguably apply.

3. Servicemaster has failed to prove that the Debtor obtained its services or the insurance check through actual fraud. The evidence does not support a finding that the Debtor induced Servicemaster to enter into the agreement to provide services by any misrepresentation of material fact, including his intention to pay Servicemaster from the insurance proceeds. The debt is not nondischargeable under 11 U.S.C. section 523(a)(2).

4. Conversion of another's property will give rise to a nondischargeable debt under 11 U.S.C. section 523(a)(6) if the conversion is willful and malicious. *In re Cummins*, 11 B.R. 222, 224 (Bankr.E.D. Tenn.1981). Conversion is any unauthorized act which deprives an owner of his property permanently or for an indefinite time. *Id.* "Willful and malicious" does not require a showing of ill-will toward or an specific intent to harm the plaintiff, but includes any wrongful act done intentionally without just cause or excuse. *See Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986); *In re Norton*, 21 B.R. 725, 728 (Bankr.W.D.Mo.1982). An act of conversion is willful and malicious if it is done deliberately and intentionally, in knowing disregard of the rights of another. *Id.* at 729. In this case, the Debtor deliberately and intentionally signed and deposited a check which named Servicemaster as joint payee and used the proceeds for purposes other than paying Servicemaster, thus depriving Servicemaster for at least as indefinite time of the use of the proceeds. This was done without just cause or excuse and in knowing disregard of Servicemaster's rights. This case is similar to *St. Paul Fire & Marine Insurance Co. v. Vaughn*, 779 F.2d 1003 (4th Cir.1985), in which the debtor used the proceeds of a government check for personal purposes after he had agreed to place the proceeds in a separate account to reimburse an insurance company which had been financing him. The court held that the debt was nondischargeable under 11 U.S.C. section 523(a)(6). This Court finds that the Debtor's debt to Servicemaster is nondischargeable under 11 U.S.C. section 523(a)(6).

5. For the purpose of determining dischargeability, embezzlement is defined by federal common law. *In re Bevilacqua*, 53 B.R. 331, 333 (Bankr.S.D.N.Y. 1985). Embezzlement is the fraudulent, or knowing and willful, misapplication or conversion of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come. *See id.*, *In re Storms*, 28 B.R. 761, 765 (Bankr.E.D.N.C.1983). As joint payee of the insurance check and according to the agreement with the Debtor, Servicemaster had a right to the insurance check proceeds. The check lawfully came into the hands of the Debtor, but the Debtor intentionally and in knowing disregard for Servicemaster's rights converted the insurance proceeds and applied them to purposes other than paying Servicemaster. The debt to Servicemaster is therefore nondischargeable under 11 U.S.C. section 523(a)(4).

6. The Court finds that Servicemaster has proven with clear and convincing evidence the elements of nondischargeability under both 11 U.S.C. section 523(a)(4) and (6).

7. When Servicemaster proceeds with its state court action, Servicemaster apparently intends to seek not only the balance due for its services but also treble damages and attorney fees. Under Indiana law, a person suffering a pecuniary loss as a result of violation of certain criminal statutes may recover from the person causing the loss an amount not to exceed three times his actual damages, costs and reasonable attorney fees. Ind.Code 34–4–30–1. Because the Debtor's actions may have violated one of these criminal statutes, the issue of whether enhanced damages, costs and attorney fees are dischargeable should be determined before Servicemaster is allowed to proceed with its state law remedies. If enhanced damages, costs and attorney fees are dischargeable, Servicemaster's contingent claim for them will be discharged and Servicemaster will be precluded by the discharge from seeking them in state court.

8. Most cases addressing the dischargeability of enhanced damages involve an underlying debt found nondischargeable under 11 U.S.C. section 523(a)(2), which excepts from discharge "any debt ... for money, property, services, or ... credit, *to the extent obtained by ... actual fraud....*" (emphasis added) Most cases have found enhanced damages dischargeable since these amounts are above the debt actually resulting from the fraud. *See e.g. In re Wilson*, 72 B.R. 956, 960 (Bankr.M.D. Fla.1987) (securities fraud judgment trebled under state law); *In re Suter*, 59 B.R. 944, 946–47 (Bankr.N.D.Ill.1986) (damages trebled under RICO); *c.f. In re The Record Company*, 8 B.R. 57, 60 (Bankr.S.D.Ind. 1981) (punitive damages dischargeable). The wording of 11 U.S.C. section 523(a)(4) and (6) is different, speaking respectively of "any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" and "any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity". At least one case has found statutorily enhanced damages to be dischargeable when the underlying debt was found nondischargeable under 11 U.S.C. section 523(a)(4). In *In re Kwiat*, 62 B.R. 818, 823 (Bankr.D.Mass.1986), *aff'd in part and vacated and remanded in part*, 81 B.R. 184 (D.Mass.1987), an attorney was found liable to a client for fraud while acting in a fiduciary capacity, and was assessed under state law five times the legal rate of interest. The court found these enhanced damages dischargeable, reasoning that the exceptions to discharge are intended to compensate a plaintiff only for actual damages. *Id.* The exceptions to discharge are in derrogation of a debtor's fresh start and should be narrowly construed. Enhanced damages are punitive in nature, *Wilson*, 72 B.R. at 960, and Congress intended penalties not in compensation for actual damages to be nondischargeable only if payable to a governmental unit, 11 U.S.C. section 523(a)(7); *Suter*, 59 B.R. at 947. The Court therefore finds that any enhanced damages to which Servicemaster may be entitled under state law are dischargeable.

9. An award for attorney fees and costs, in contrast to enhanced dam-

ages, can be characterized as compensation to a plaintiff for an actual loss resulting from a debtor's action that gave rise to the nondischargeable debt, and therefore should also be nondischargeable. *See Kwiat*, 62 B.R. at 823 and 81 B.R. 191 n. 16; *c.f. In re Hopper*, 71 B.R. 67, 68 (Bankr.D. Col.1987) (state court award of attorney fees and costs because debtor used fraudulent document in prosecuting counterclaim against creditor nondischargeable under section 523(a)(6)). Although some cases hold attorney fee awards dischargeable, they involve for the most part section 523(a)(2) debts, and the courts have found the attorney fees dischargeable because they were not debts for money, property, services or credit obtained by the debtors by fraud. *See e.g. In re Barr*, 54 B.R. 922, 925 (D.Ore.1984); *In re Smith*, 72 B.R. 300, 301 (Bankr.M.D.Fla.1987). This Court concludes that if a creditor is statutorily entitled to attorney fees and costs incurred because of a debtor's actions that render a debt nondischargeable under 11 U.S.C. section 523(a)(4) or (6), the debt for those attorney fees and costs is also nondischargeable. The Court therefore finds that if the Debtor's actions entitle Servicemaster to an award of attorney fees and costs under state law, such award is nondischargeable.

Judgment consistent with the above findings of fact and conclusions of law will be entered separately.

Kevin B. McCarthy, Indianapolis, Ind., U.S. Trustee.

William L. Price, Indianapolis, Ind., for debtors.

Timothy L. Brennan, Brennan, Curtis & Brennan, Indianapolis, Ind., for American Sec. Corp.

William E. Limeberry, Greenwood, Ind., for Gen. Finance Corp.