**In re Richard M. SCHALK, Debtor.**

**KEY BANK OF NEW YORK, Plaintiff,**

v.

**Richard M. SCHALK, Defendant.**

**Bankruptcy No. 94–61167.**
**Adv. No. 95–70080.**

United States Bankruptcy Court,
N.D. New York.

Dec. 20, 1995.

**524**

Grass, Balanoff & Whitelaw, P.C., Syracuse, New York (Mary Lannon Fangio, of counsel), for Richard M. Schalk.

Hiscock & Barclay, L.L.P., Syracuse, New York (J. Eric Charlton, of counsel), for Key Bank of New York.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The adversary proceeding now before this Court was commenced by the filing of a complaint by Key Bank of New York ("Key Bank") on May 8, 1995, seeking a determination of the nondischargeability of a debt pursuant to § 523(a)(2), (4) and (6) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code").[1] On June 19, 1995, the defendant, Richard M. Schalk ("Debtor") filed an answer "to the reissued complaint," as well as a counterclaim pursuant to Code § 523(d)

seeking attorney fees and costs. Key Bank filed a reply on June 22, 1995, denying Debtor's allegations and requesting that the Court dismiss the Debtor's counterclaim.

A trial was held on September 6, 1995, in Utica, New York. Prior to offering any testimony, Key Bank elected to withdraw its causes of action based on Code § 523(a)(2) and (6). Key Bank presented the testimony of three witnesses. Although listed as a potential witness by both parties, Debtor was not present during the course of the trial. Rather than hear closing arguments, the Court afforded the parties an opportunity to file memoranda of law. The matter was submitted for decision on October 2, 1995.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(I) and (O).

### FACTS

On or about January 10, 1994, the Debtor made a claim under his homeowner's insurance policy with Allstate Insurance Company ("Allstate") for water and ice damage to his residence. Allstate's Senior Staff Claims Representative, Harold Hudson, Jr., testified that it was Allstate's practice to hire certain companies with which it had established a relationship to perform repair services on an emergency basis. (Any services are rendered only with the concurrence of the insured.) In this case, a representative of CNY Fire Emergency Services, Inc. ("CNY") inspected the damage to the Debtor's residence on January 10, 1994. Phillip Oropallo ("Oropallo"), president and owner of CNY, testified that work had been started immediately in order to mitigate damage to the Debtor's residence and was completed over approximately a seven day period. CNY's estimate for the work, dated January 20, 1994, amounted to $3,098.53 and was delivered to Allstate, as well as to the Debtor (*see* Debtor's Exhibit "A").

---

1. According to the docket in the Adversary Proceeding, Key Bank was required to refile its complaint on May 8, 1995, because of an incorrect adversary proceeding case number. Debtor's original answer in response to Key Bank's initial complaint, which was filed on June 1, 1995, included an affirmative defense of improper service.

It was Oropallo's testimony that upon completion of the work, it was CNY's practice to obtain a Certificate of Satisfaction from the insured, which it then submits to Allstate with a request for payment. In this case, CNY made several unsuccessful attempts to contact the Debtor before notifying Allstate. Allstate issued a check in the amount of $2,845.53 ("Check"),[2] made payable to "Richard and Virginia Schalk *and* CNY Fire Emergency Services" on January 22, 1994 (*see* Key Bank's Exhibit 2). Hudson explained that the Check was issued to both the contractor (CNY) and the insured (Debtor) to protect the interest of the mortgagee and also to ensure that the work had been performed to the Debtor's satisfaction before the contractor received payment.

Although issued on January 22, 1994, Allstate delayed forwarding the Check to the Debtor. Ultimately, it did mail the Check to the Debtor and on March 21, 1994, the Check was then deposited into Debtor's account with Key Bank (*see* Key Bank's Exhibit 4). The Check was endorsed by the Debtor and his wife, Virginia (*see* Key Bank's Exhibit 2). There was no endorsement by CNY. At the time of the deposit, the balance in the Debtor's account was $1,359.29 (*see* Key Bank's Exhibit 5). As of April 11, 1994, the account's balance was $3,017.70.

In response to an inquiry by CNY, which had not received payment for its services, Hudson testified that an investigation was carried out by Allstate. It revealed that the Check had been cashed without CNY's endorsement. As a result, Allstate made a claim against its depository bank, Wachovia Bank of North Carolina ("Wachovia"), and Key Bank in turn was required to make restitution to Wachovia. Key Bank then allegedly charged back the monies against the Debtor's account on or about June 21, 1994, creating an overdraft (*see* ¶ 6(h) of Key Bank's Complaint). A credit was issued to Allstate by Wachovia in the amount of $2,848.53 on or about July 14, 1994 (*see* Key Bank's Exhibit 3).

On cross-examination Oropallo testified he and the Debtor had inspected the work done by CNY, and he believed the Debtor was satisfied with the repairs. At some point, however, Debtor questioned certain charges included in CNY's estimate for work which allegedly had not been performed by CNY. For instance, it was Oropallo's testimony that the Debtor and his wife were adamant about getting back into their home when the work was completed, and CNY did not have an opportunity to perform certain cleanup work included in its estimate. Debtor subsequently invoiced CNY for the cleanup, which allegedly had been performed by the Debtor's wife. CNY agreed to reduce its charges by the amount of the Debtor's deductible, namely $250.

The original estimate was again readjusted downward through Allstate sometime on or about May 28, 1994, to $2,793.21 (*see* Debtor's Exhibit "A"). A comparison of the two estimates (Key Bank's Exhibit 1 and Debtor's Exhibit "A") reveals that rather than the installation of replacement acoustical tiles to the ceiling in the kitchen, a drywall ceiling had been installed. It also appears that in the living room it had not been necessary to remove a drywall ceiling. The removal and replacement of the vanity and medicine cabinet in the bathroom were also deleted from the revised estimate. On or about July 7, 1994, Allstate sent a letter to the Debtor requesting that the Debtor provide it with any estimates obtained to repair damage Debtor alleged had been caused by CNY (*see* Debtor's Exhibit "E"). The Court was not presented with any evidence that the Debtor responded to Allstate's letter. However, according to Hudson a check was ultimately paid to CNY on or about August 1, 1994, in the amount of $2,493.21[3] (approximately $352 less than the original check issued by Allstate). Oropallo confirmed that CNY had received payment.

---

2. Pursuant to the terms of the Debtor's insurance policy, the Debtor was required to pay an $250 deductible directly to. CNY. The amount of the check reflects the difference between CNY's original estimate of $3,098.53 and said deductible.

3. No explanation was given for the difference of $300 between the check and the estimate. Prior testimony indicated that the Debtor's deductible was $250.

In the interim, the Debtor filed a voluntary petition ("Petition") seeking relief pursuant to Chapter 13 of the Code on April 28, 1994. According to Schedule F of the Debtor's Petition, Niagara Mohawk was listed as the Debtor's only unsecured, nonpriority creditor. However, on July 12, 1994, Debtor amended Schedule F to include CNY as an unsecured creditor with a claim of $2,000. According to Schedule C of Debtor's Petition, the balance in Debtor's checking account with Key Bank on the day he filed his Petition was $10.00.

A motion filed by the Chapter 13 Trustee seeking conversion or dismissal of the Debtor's case was heard by the Court on December 20, 1994, and on January 11, 1995, the Court signed an Order converting the case to Chapter 7. On March 3, 1995, the Debtor filed an Amended Schedule F, listing Key Bank as holding an unsecured, nonpriority claim of $2,848.53. On June 2, 1995, Key Bank filed a proof of claim in that amount.

## ARGUMENTS

Key Bank alleges that in depositing the Check into his account without first obtaining the endorsement of CNY, the Debtor was in possession of monies to which he was not rightfully entitled and thereby committed larceny. Therefore, Key Bank asserts that the debt to Key Bank should be rendered nondischargeable pursuant to Code § 523(a)(4). According to Debtor's Answer, any debt owed to Key Bank is a result of Key Bank's own negligence (see ¶ 4 of Debtor's Answer). Debtor also asserts in his Answer that Key Bank has subrogation of CNY's claim and contends that any debt owed to CNY would be dischargeable (see id. at ¶ 5). In addition, Debtor contends that he and his wife had an interest in the Check as long as they disputed the work performed by CNY (see id. at ¶ 6). Debtor asserts that he and his wife had every intention of paying CNY once certain adjustments had been made to CNY's estimate for the repairs (see id.).

## DISCUSSION

■ Code § 523(c) provides that a debtor is to be discharged from a debt of a kind specified in Code § 523(a)(4) unless the creditor *to whom such debt is owed* seeks a determination that the debt is nondischargeable. Debtor contends that Key Bank's claim is derived from that of CNY. However, on or about August 1, 1994, CNY's claim was satisfied when Allstate issued a second check to CNY.

■ Key Bank's claim, instead, is based on the fact that it now holds the Check and is "credited with ownership of the proceeds of the item ..." See *622 West 113th St. Corp. v. Chemical Bank New York Trust Co.,* 52 Misc.2d 444, 446, 276 N.Y.S.2d 85, 89 (N.Y. City Civ.Ct.1966) (citing *First Nat'l Bank of Blanchester v. Stengel,* 169 N.Y.S. 217 (N.Y.Sup.), aff'd 185 A.D. 906, 171 N.Y.S. 1085 (N.Y.A.D. 4th Dep't 1918), aff'd 227 N.Y. 659, 126 N.E. 906 (N.Y.1920)). A debtor-creditor relationship existed between Key Bank and its customer, the Debtor, once there had been final settlement of the Check. *Id.* Pursuant to § 4–207 of the New York Uniform Commercial Code ("NYUCC"), Key Bank was entitled "to hold the depositor (Debtor) on its endorsement and the warranties connected therewith." *Id.* On that basis, the Court concludes that Key Bank, having reimbursed Wachovia and now being in possession of the Check, is a creditor "to whom a debt is owed" by the Debtor and has standing to bring an action pursuant to Code § 523(a)(4). Indeed, the Debtor acknowledged Key Bank's status as a creditor when it again amended Schedule F of his Petition on March 3, 1995, listing Key Bank as holding an unsecured, nonpriority claim of $2,848.53.

■ The issue is whether Key Bank is entitled to the relief sought in its Complaint. According to the standard set forth by the Supreme Court, a party seeking a determination that a debt is nondischargeable has the burden of establishing the necessary proof by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). In seeking a determination of the nondischargeability of a debt pursuant to Code § 523(a)(4), Key Bank does not allege that there is any fiduciary relationship which existed between itself and the Debtor. Rather, it asserts that

the debt arose as a result of the Debtor's alleged larceny based on his deposit of the Check into his account with Key Bank without CNY's endorsement.

 Under Code § 523(a)(4), larceny is defined by reference to federal common law. *In re Sokol,* 170 B.R. 556, 560 (Bankr. S.D.N.Y.1994) (citations omitted), *aff'd* 181 B.R. 27 (S.D.N.Y.), *rehr'g denied* 1995 WL 317315 (S.D.N.Y.1995). For nondischargeability purposes, the creditor must establish the debtor's fraudulent intent in taking the creditor's property. *Id.* (citing *In re Kelly,* 155 B.R. 75, 78 (Bankr.S.D.N.Y.1993)); *see also In re Roberti,* 183 B.R. 991, 1009 (Bankr.D.Conn.1995). Code § 523(a)(4) makes no distinction between whether a debtor's appropriation of the property was initially wrongful (larceny) or initially authorized (embezzlement). Establishing either one serves as a basis for further inquiry into Debtor's intent when the creditor's property is appropriated.

Key Bank alleges that the Debtor wrongfully deposited the Check into his account in that he failed to obtain the endorsement of the copayee, CNY. According to NYUCC § 3–116(b), a check made payable to copayees must be negotiated, discharged or enforced by all payees. *Maldonado v. Aetna Cas. & Sur. Co.,* 184 A.D.2d 553, 554, 584 N.Y.S.2d 864, 864–865 (N.Y.A.D.2d Dep't 1992). Debtor does not deny that he deposited the Check into his Account with Key Bank without CNY's endorsement (*see* ¶ 4 of Debtor's Answer). Accordingly, he wrongfully obtained a credit to his account in the amount of $2,845.53. The question for the Court is whether at the time he deposited the monies Debtor had the fraudulent intent to deprive Key Bank of its property.

In *In re Valentine,* 104 B.R. 67 (Bankr. S.D.Ind.1988), the debtor and his wife endorsed a check issued by their insurance company to cover the cleanup and repair of their residence following a fire. The check was made payable to the debtor and his wife, as well as Servicemaster, the company which performed the cleanup and repair to the debtor's residence. The debtor proceeded to deposit the check into his account after signing Servicemaster's name to the check. The court made a finding that "[b]y depositing the check into his account rather than forwarding the check to Servicemaster and by neglecting to promptly pay Servicemaster from the proceeds then in his account, the debtor acted in knowing disregard of Servicemaster's rights." *Id.* at 69. The court concluded that the debt was nondischargeable under Code § 523(a)(4). *Id.* at 71. *But see In re Wilson,* 114 B.R. 249, 252–253 (Bankr.E.D.Cal.1990) (Plaintiff failed to establish deceitful intent of copayee/debtor at the time he endorsed the check on behalf of the other copayee and deposited the check into the operating account of his corporation.) In both *Valentine* and *Wilson,* the debtor had, without authority, endorsed the name of the other copayee, and it was the copayee who was seeking to have the debt deemed nondischargeable. Both cases can be distinguished from the matter presently before this Court since it is the Debtor's depository bank, not the copayee, that has commenced the adversary proceeding herein.

 As an initial matter, the Court must determine whether Key Bank had any interest in the monies when the Debtor allegedly committed larceny. At the time the Debtor deposited the Check into his account, Key Bank's role was that of an agent for collection of the Check deposited by the Debtor. *See 622 W. 113th St., supra,* 52 Misc.2d at 446, 276 N.Y.S.2d 85. It was only after final settlement had occurred that Key Bank's role of agent was terminated and the relationship as debtor-creditor ensued. *See id.* Under this analysis, Key Bank is without legal standing to assert that the Debtor appropriated Key Bank's property with fraudulent intent since Key Bank had no right or interest in the property when it was initially deposited.

 Even if the Court were to accept the argument that Key Bank had some sort of contingent interest in the proceeds by virtue of having credited the Debtor's account in the amount of the Check, Key Bank has failed to establish fraudulent intent on the part of the Debtor. While the Court may infer intent based on an analysis of the totality of the circumstances (*See In re Nahabedi-*

*an*, 87 B.R. 214, 216 (Bankr.S.D.Fla.1988) (citations omitted)), there has been no evidence presented that would establish by a preponderance of the evidence that the Debtor intended to defraud Key Bank when he made the deposit of the Check without CNY's endorsement on March 21, 1994. Debtor did not attempt to cash the check, and he did not attempt to forge CNY's endorsement. Instead, he deposited it in his account and maintained a balance sufficient to make payment to CNY for at least three weeks thereafter. Debtor contended that he and his wife had an interest in the Check as long as they disputed the claim of CNY in connection with the repairs performed on their residence. Oropallo testified that the Debtor was given a credit by CNY in the amount of his deductible for the cleanup work listed in CNY's estimate and allegedly performed by the Debtor and his wife. There were also additional downward adjustments to CNY's original estimate made by Allstate and reflected in the check issued to CNY by Allstate in August, 1994.

It is unfortunate that Key Bank overlooked the missing endorsement and did not receive notification from Wachovia of the missing endorsement in time to properly charge back the amount of the check against the Debtor's account. *See 622 West 113th St., supra,* 52 Misc.2d at 446, 276 N.Y.S.2d 85 (Final settlement of a deposited item terminates the collecting bank's right of chargeback.) Nonetheless, for the reasons discussed above the Court concludes that Key Bank has failed to meet its burden of proof insofar as establishing the Debtor's fraudulent intent.

■■■■ In his counterclaim, Debtor requests that the Court award him costs and attorney's fees pursuant to Code § 523(d) on the basis that Key Bank was not substantially justified in seeking to have its debt determined to be nondischargeable. To prevail on a motion pursuant to Code § 523(d), the debtor must establish (1) the creditor sought a determination of the dischargeability of a debt pursuant to Code § 523(a)(2), (2) the debt is a consumer debt, and (3) the debt was discharged. *See generally In re Harvey,* 172 B.R. 314, 317 (9th Cir. BAP 1994), citing *In*

*re Kullgren,* 109 B.R. 949, 953 (Bankr. C.D.Cal.1990) and *FCC Nat'l Bank v. Dobbins,* 151 B.R. 509, 511 (W.D.Mo.1992). The burden then shifts to the creditor to prove that its actions in requesting said determination were substantially justified and that there are special circumstances that would make an award of fees unjust. *Id.,* citing *In re Rhodes,* 93 B.R. 622, 624 (Bankr.S.D.Ill. 1988).

■■■ In the matter *sub judice,* there is no question that Key Bank initially sought a determination of the dischargeability of a debt pursuant to Code § 523(a)(2)(A). However, that particular cause of action was withdrawn at the commencement of the trial and prior to any testimony being presented. The fact that no trial occurred on the merits of Plaintiff's cause of action based on Code § 523(a)(2)(A) does not preclude the Debtor from recovering costs and attorney's fees pursuant to Code § 523(d). *A.L. Lee Memorial Hospital v. McFadyen (In re McFadyen),* 192 B.R. 328, 333–34 (Bankr.N.D.N.Y. 1995), citing *In re Kullgren,* 109 B.R. 949, 953 (Bankr.C.D.Cal.1990). In *McFadyen* the plaintiff moved to withdraw its cause of action pursuant to Code § 523(a)(2)(A), conceding that the debtor won that particular cause of action. *Id.* at 333–34. Debtor's counsel objected, describing it as "litigation by ambush," asserting that he and his client had spent considerable time preparing to defend that aspect of plaintiff's complaint. The Court determined that an award of costs and attorney's fees to the debtor was appropriate.

The facts in *McFadyen,* however, are easily distinguished from the matter *sub judice.* In *McFadyen* over a year had elapsed from the time the adversary proceeding had been commenced. The initial complaint had contained allegations of fraud and misrepresentation and was amended nine months later to include a cause of action based on Code § 523(a)(8) without deleting the cause of action based on Code § 523(a)(2). In granting debtor's request, the Court found that plaintiff had not established any basis for fraud on the part of the debtor and concluded that the plaintiff had not been substantially justified

in bringing its cause of action pursuant to Code § 523(a)(2)(A). *Id.* at 333–34.

Key Bank commenced this adversary proceeding on May 8, 1995, and four months later on September 6, 1995, the trial was held. There is no evidence that there has been any lengthy discovery. Debtor's counsel did not oppose Key's motion to withdraw its cause of action based on Code § 523(a)(2)(A). Indeed, any preparation of the Debtor, who failed to appear at trial to testify in defense of Key Bank's cause of action based on Code § 523(a)(2)(A), clearly would have overlapped with any preparation of a defense based on Code § 523(a)(4) in that both involve having to establish fraudulent intent. Although the Court concluded that Key Bank had failed to meet its burden of proof with respect to the Debtor's alleged fraudulent intent, it presented the Court with evidence from which it could reasonably have reached the opposite conclusion. The Court concludes that although Key Bank elected to withdraw its cause of action pursuant to Code § 523(a)(2)(A) at the commencement of the trial in this adversary proceeding, under the circumstances it was substantially justified in requesting a determination of dischargeability of its debt based on Debtor's alleged fraud and should not be required to reimburse Debtor for his costs and attorney's fees.

For the foregoing reasons, it is

ORDERED that Key Bank's Complaint seeking a determination of nondischargeability of the debt owed to it by the Debtor pursuant to Code § 523(a)(4) is dismissed; and it is further

ORDERED that Debtor's counterclaim seeking costs and attorney's fees pursuant to Code § 523(d) is dismissed.